[Civ. No. 20930.  Second Dist., Div. Two.  June 21, 1955.]

MICHAEL T. RAFFERTY et al., Respondents, v.
CITY OF COVINA, Appellant.

Allard, Shelton & O'Connor and Burke, Williams & Sorensen for Appellant.

Charles K. Hackler for Respondents.

FOX, J.—This is an appeal from a judgment in certiorari annulling annexation proceedings of the city of Covina which were taken pursuant to the provisions of the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326 and §§ 35000-35006), for brevity hereinafter called the act. The territory here involved is designated as Westerly Annexation District No. 18, hereinafter referred to as WAD 18.

## FACTUAL BACKGROUND

On September 17, 1951, Ordinance No. 314 was passed by the city council of Covina annexing to the city under the act certain uninhabited territory. After two publications of the ordinance, on September 21st and 28th, 1951, and the expiration of 30 days from and after its passage, the ordinance was, on October 24, 1951, duly filed by the Secretary of State of California. The territory included in this proceeding, known as Westerly Annexation District No. 6, hereinafter called WAD 6, was a strip of land approximately one mile in length and 33 feet in width, except at the extreme westerly end thereof where a portion of the strip is some 230 feet in width.

On January 4, 1954, William F. and Genevieve Lavelle

filed with the city clerk a petition requesting annexation to the city of two parcels of uninhabited land owned by them. On the same date a separate petition was filed on behalf of Sadie Vincent requesting annexation of uninhabited land owned by her. On January 8, 1954, another such petition was filed by Frank E. and Gertrude P. Anderson covering uninhabited land owned by them. The total acreage encompassed in these three petitions was approximately 29 acres. Subsequently, the city council, acting on these petitions, treated them as consolidated, added 26 acres, not included in any of the petitions, and proceeded under the act to annex this territory to the city in one proceeding known as Westerly Annexation District No. 15, hereinafter called WAD 15. To that end the city council passed annexation Ordinance No. 352 on May 3, 1954. The plaintiffs in this case attacked the action of the city in annexing the territory covered by WAD 15 by certiorari. Pursuant to stipulation, the superior court, on June 18, 1954, rendered a judgment annulling and setting aside Ordinance No. 352 and declaring that the proceedings known as WAD 15 were null and void.[1]

On May 27, 1954, and prior to the rendition of the aforesaid judgment, a new petition was presented to the city clerk of Covina and accepted by him for filing, which requested annexation to the city as uninhabited territory the identical lands described in WAD 15 and Ordinance No. 352. This new petition was signed by all those who had signed the three separate petitions and, in addition, by F. M. McCown. Thereafter the city council, acting on this petition and pursuant to the provisions of the act, initiated the proceedings known as Westerly Annexation District No. 18, here under attack. After public hearings on July 19, Ordinance No. 367 was adopted, on August 2, 1954, annexing the territory described in WAD 18 to the city. Two days prior to the adoption of Annexation Ordinance No. 367 the Lavelles, the Andersons, and Sadie Vincent, who, respectively, were the signers of the original annexation petitions, filed with the city clerk three separate documents entitled "withdrawal of petition." No action was taken on these attempted withdrawals.

WAD 18 abuts upon that portion of the city which was added by the proceedings known as WAD 6 and extends

---

[1]These proceedings were annulled because there was no petition which described the lands covered by WAD 15 as required by Gov. Code, § 35305.

southerly therefrom. The northerly boundary line of WAD 18 and the southerly boundary line of that portion of the city added by WAD 6 are coterminous for an aggregate distance of over 2,000 feet. For purposes of clarification, a map showing WAD 18 and its relation to the city is reproduced.

The first question is: Did the city council have jurisdiction to act upon the petition of May 27, 1954, and pursuant thereto initiate proceedings for the annexation of the territory therein described?

It may be conceded, as plaintiffs argue, that the vitality of three petitions was not affected by the judgment of June 18, 1954, invalidating WAD 15, and that they were still before the city council for consideration. The factual picture, however, had changed. A new petition, in proper form, encompassing the same territory as WAD 15 and signed by the same property owners who had previously signed the separate petitions and also by the owner of the remaining land included therein was on file. It was properly presented for there is no statutory prohibition against presenting a petition which includes territory in another petition for annexation *to the same municipality*. The only provision of the law relating to the presentation of a subsequent petition covering territory included in another petition is Government Code, section 35308.[2] That section, however, relates only to a subsequent petition to *another* city which includes some of the same territory. There is likewise no statutory prohibition against a city council's acting upon a petition which includes territory in another petition filed with it. However, Government Code, section 35309,[3] prohibits the legislative body of a city from taking "any action" on an annexation petition which describes any territory that is included in an earlier petition to *another* city, until the ordinance of the first city disapproving annexation becomes effective. The purpose of such restrictions is obvious, for two cities cannot at the same time exercise jurisdiction over the same territory. (See *City of Anaheim* v. *City of Fullerton*, 102 Cal.App.2d 395 [227 P.2d 494].) But in the instant case we have no such problem since we are dealing with a single city. Hence the statutory inhibitions and priorities are not here applicable. So, when the WAD 15 proceedings were set aside by the judgment of June 18, 1954, the city

[2]Gov. Code, § 35308 reads: "When a petition for the annexation of any territory to a city has been received by its legislative body a petition asking for the annexation of any of the territory described in the petition shall not be presented to the legislative body of any other city until an ordinance disapproving such annexation becomes effective."

[3]Gov. Code § 35309 reads: "After one legislative body has received a petition, no other legislative body shall take any action for the annexation of any part of the territory described in the petition, until the ordinance of the first city disapproving annexation becomes effective."

council had four annexation petitions before it covering all or portions of the territory in question. Since the law did not establish any priority for the consideration of these petitions the city council had the right in the orderly conduct of the city's affairs to exercise a reasonable discretion as to which of these petitions it would first consider. In the good faith exercise of such discretion they were entitled to take into account the practical aspects of the situation. By the adoption of Ordinance 352 in the WAD 15 proceedings the city council obviously believed the parcels represented by the three separate petitions plus the additional territory should be annexed to the city. That attempt, for technical reasons, proved abortive. The deficiencies, however, had now been corrected by the petition of May 27th. ■ To have gone back and conducted three separate annexation proceedings pursuant to the request of the three petitions rather than a single proceeding would have resulted in unnecessary additional work and expense to the city and created complications with respect to the annexation of the property owned by Mr. McCown, one of which would have been a fourth annexation proceeding in the event he persisted in his desire to have his property become a part of the city.

While the attempt by the Lavelles, Andersons and Sadie Vincent to withdraw their earlier separate petitions so that the collective petition of May 27th would be before the council may not have been effective for that purpose (see *Sweetwater Fruit Co.* v. *City Council,* 126 Cal.App.2d 655 [272 P.2d 828]), the city council could take their request to withdraw their individual petitions into consideration in exercising its discretion as to which of the several petitions should be taken up and in deciding to proceed pursuant to the petition of May 27th.

A closely parallel situation was considered in *People* v. *City of Oakland,* 123 Cal. 598 [56 P. 445]. In that case a petition for annexation of inhabited territory was filed with the city council. A committee of the council reported to that body, recommending that no action be taken on the petition as the description of the property contained therein was insufficient. Before final action was taken by the council on this petition, which was subsequently held to be valid, a second petition covering all the territory included in the first and territory in addition thereto, was presented to the city council and proceedings for annexation were initiated pursuant to the second petition. It was contended the council

had no jurisdiction to act on the second petition. The court in effect held that the fact that the first petition later was held to be a valid petition did not deprive the council of jurisdiction to act upon the second petition.

In sustaining the annexation proceedings under the second petition the court pointed out also that no one had been injured by reason of the council's error as to the sufficiency of the first petition and the consequent failure to submit it to a vote. On this point the court stated (pp. 606-607) that *"the second petition embraced all the territory described in the first, and additional territory not described in the first* . . . as no one who was included in the first petition as a resident of the territory proposed to be annexed was excluded by the second, it could not be necessary to submit both to a vote of the electors. No one could be injured by failure to submit the first to a vote. . . ." (Emphasis added.)

The rationale of the Oakland case applies, a *fortiori,* to the situation here present. Plaintiffs in the instant case have suffered no prejudice by the council's proceeding upon the combined petition rather than upon the three separate petitions. Plaintiffs are not property owners within the area being annexed—the sole property owners therein are the signers of the May 27th petition. Neither are they owners of property embraced within any of the territory covered by the separate petitions. Therefore, they had no right of protest as property owners in any of the proposed annexation areas which could have compelled cessation of such proceedings. (Gov. Code, § 35313.) As in the Oakland case, *supra,* all property included in the three separate petitions was included in the later consolidated petition, all of whose signatories, as the sole property owners involved, were eager to go ahead with the WAD 18 proceeding. As citizens of or taxpayers in Covina, plaintiffs had available to them the same right of protest against the WAD 18 proceeding as would have been available if there had been three or four separate annexation proceedings. Since all of the property encompassed by WAD 18 formed a compact, unified parcel of land, the Legislature clearly had sufficient right and reason to expedite the pending matters by giving priority to the petition which provided the most efficacious means of accomplishing the annexation with no sacrifice of any essential right of the parties now complaining.

The second question is: Is WAD 18 contiguous to the city of Covina?

Section 35302 of the Government Code reads: "The boundaries of a city may be altered and contiguous uninhabited territory annexed to, and incorporated within it, pursuant to this article."

Government Code, section 35002.5, which became effective on September 22, 1951, provides: "Territory shall not be deemed contiguous as the word 'contiguous' is used in this chapter if the only contiguity is based on a strip of land over 300 feet long and less than 200 feet wide exclusive of highways."

An examination of these sections discloses that they are dealing with the *territory proposed to be annexed* rather than with the physical shape and dimensions of the part of the city to which such territory would be attached. Section 35002.5, *supra,* provides in effect only that if contiguity to the city is based on a strip of land over 300 feet long *and* less than 200 feet wide it shall not be deemed contiguous within the meaning of the statute. It does not provide that territory may not be annexed to a portion of the city which is over 300 feet long and less than 200 feet wide. The obvious purpose of this section is to place some restrictions on "strip" annexations and thus "at least partially" prohibit "the extremes of gerrymandering" made possible by the decision in 1949 in *City of Burlingame* v. *County of San Mateo,* 90 Cal.App. 2d 705 [203 P.2d 807]. (*People* v. *Town of Corte Madera,* 115 Cal.App.2d 32, 47 [251 P.2d 988].)

This interpretation is completely consonant with the realities of the evil designed to be abolished and the logic of the situation. For it must be kept in mind that the annexing city, regardless of the irregularities of its own preexisting contours, must be treated as a geographical entity. The description in the statute of the physical shape and dimensions on which a nexus with the city may not be based applies solely to the contiguous strip of territory whose annexation is being undertaken and not to the portion of the city to which it is juxtaposed.

Before the adoption of section 35002.5 any contiguity to the city of the area to be annexed was sufficient. By the amendment the Legislature has stated what is not contiguity. It has not stated what *is* contiguity, except by the statement of what is deemed not to be contiguity. Therefore, in order to determine what is contiguity the same test is applied as was applied prior to the adoption of that section, except it must be tested further to determine whether it falls within

the prohibition. ▉ Contiguity exists where boundary lines are coterminous. (*City of Burlingame* v. *County of San Mateo, supra.*) Here the common boundary lines of the area to be annexed (WAD 18) and the city of Covina are continuously coterminous for an aggregate length of over 2,000 feet. Furthermore, such territory does not fall within the prohibition of section 35002.5 for the contiguity of WAD 18 to the city is not based on a strip of land over 300 feet in length and less than 200 feet wide, but is in fact based on coterminous boundary lines. ▉ The trial court was therefore in error in holding that WAD 18 is not contiguous to the city of Covina.

Plaintiffs argue that if WAD 18 proceedings were held valid "its effect would be to virtually surround a large area of unincorporated lands as was true in the Burlingame case. . . ." A glance at the map reproduced herein shows there is no such situation in this annexation. Furthermore, anticipating this problem, the Legislature, in 1951, enacted section 35326 of the Government Code which provides that "Territory shall not be annexed to a city . . . if, as a result of such annexation, unincorporated territory is *completely surrounded* by such city." (Italics added.) This, of course, is a matter of public policy on which the Legislature, and not the courts, has the right to speak. (*People* v. *Town of Corte Madera, supra.*) The Legislature has said there shall be no encirclement of unincorporated territory. Beyond that it has not gone. The court's function in the premises is to interpret the rules laid down by the Legislature, not to make new or additional rules. (*Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447, 457 [283 P.2d 57].) Plaintiffs' argument on this point is completely lacking in merit.

Plaintiffs also contend that WAD 18 is not contiguous to the city of Covina on the theory that the portion of the city with which its boundaries are coterminous is not itself legally a part of the city. Reference to the map discloses that the more than 2,000 feet of the city boundary line with which WAD 18 is coterminous was formerly WAD 6 which was annexed to the city in 1951. Plaintiffs, however, contend that the annexation of WAD 6 is void. If their position is correct then there would be no contiguity of WAD 18 with the city, and the attempted annexation of the latter territory would necessarily fail. Plaintiffs' argument that WAD 6 is void is based on the fact that section 35002.5 of the Government Code went into effect on September 22, 1951, and that Ordinance 314 of the city of Covina annexing the territory

designated as WAD 6 was not filed by the Secretary of State until October 24, 1951, and that such annexation did not become effective until such date; that WAD 6 was a strip of land more than 300 feet in length and less than 200 feet wide and consequently, in view of the provisions of section 35002.5, could not legally be annexed to the city.

The attorney general refused to authorize quo warranto proceedings to test the validity of the WAD 6 proceedings (Ops. Atty. Gen., pp. 54-63, 6-29-54). The trial court concluded that "the validity of Westerly Annexation District No. 6 cannot now be attacked by certiorari." Plaintiffs apparently do not attack this conclusion. Rather, they take the position that the purported annexation of WAD 6 was void and may be so held in the instant case and that since the proceedings to annex WAD 6 were void section 349½, Code of Civil Procedure,[4] which provided a three months' statute of limitations for attacking annexation proceedings, is not applicable.

Plaintiffs' position is not sound for their first premise is erroneous. ▮▮▮ Ordinance No. 314, which annexed to the city the territory known as WAD 6, was passed on September 17, 1951 (and given its first publication on Sept. 21st). That was the final legislative act on the part of the city. True, the ordinance required a second publication and the expiration of 30 days after its passage before it went into effect. But this second publication was merely a matter of routine and the 30 days would elapse in due course of time. It is also true that when "an ordinance approving annexation becomes effective" the city clerk must immediately "transmit" a certified copy to the Secretary of State. (Gov. Code, § 35316.) Upon receipt of such copy, "the Secretary of State shall file it. . . ." (Gov. Code, § 35317.) From the date of such filing, "annexation is complete. . . ." (Gov. Code, § 35318.) It is obvious that these acts were purely ministerial in character. They were simply routine procedure to give notice to the world that the city council of Covina had approved the annexation of the territory encompassed within WAD 6. These ministerial acts could not invalidate the action which the city council took and had a perfect legal

[4]The material portion of section 349½, Code of Civil Procedure, reads:
"The validity of any proceedings for the annexation of territory to a municipal corporation, . . . shall not be contested in any action unless such action shall have been brought within three months after the completion of such proceedings . . ."

right to take on September 17th, which was five days before section 35002.5 went into effect.

This conclusion is fortified by the principle that statutes are prospective in their operation in the absence of a clear intention to the contrary. (23 Cal.Jur. § 26, p. 629.) There is nothing whatever in section 35002.5 to suggest that it should apply to an annexation proceeding, such as here, where the city council had taken final legislative action approving the annexation prior to that section becoming the law of the state.

It is therefore clear that on the record before us the WAD 6 proceedings were not void. Because more than three months have elapsed since the completion of that annexation proceeding, it may not now be challenged. The territory represented by WAD 6 was therefore legally incorporated into and became a "part of the city." Since, therefore, the boundary line of WAD 18 is coterminous with that of the city for more than 2,000 feet the requirement of contiguity is fully satisfied.

The judgment is reversed with directions to enter findings of fact, conclusions of law and judgment in accordance with the views herein expressed.

Moore, P. J., and McComb, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 17, 1955.