[Civ. No. 10155. Third Dist. Dec. 8, 1961.]

MANTECA UNION HIGH SCHOOL DISTRICT et al., Plaintiffs and Appellants, v. CITY OF STOCKTON et al., Defendants and Respondents.

752

Blewett, Blewett & Garretson and Rolla L. Garretson, Jr., for Plaintiffs and Appellants.

Monroe N. Langdon, City Attorney, and Jack D. Wickware, Assistant City Attorney, for Defendants and Respondents.

PIERCE, J.—Appellant school districts and several affected landowners, complaining that proceedings of respondent city, its city council and clerk, taken under the "Annexation of Uninhabited Territory Act of 1939" (Gov. Code, §§ 35300 et seq.) were illegal, appeal from a superior court judgment denying them a writ of certiorari.

Broadly stated, the questions are:

1. Was there a termination of the original proceedings when, to correct an omission in its resolution setting the annexation petition for hearing, the city council adopted a second resolution, purporting to "rescind" the first?

2. Did the 1959 amendment to the Education Code which amended temporarily section 2421.5 and thereafter repealed and reenacted it as section 1722, both effective after the city ordinance was adopted, but before it was filed by the Secretary of State, nullify the annexation proceedings, since no agreement to the annexation by appellant school districts, as required by the amendment, was obtained?

The answer to both questions is "No."

On January 6, 1959, a petition for the annexation of the area in question to the City of Stockton was filed. After preliminary proceedings, all admittedly in compliance with the requirements of the act above named, the city council on February 9, 1959, adopted Resolution No. 21458, giving notice of the proposed annexation and of the hearing thereon.

This resolution fully complied with Government Code sections 35305 and 35306, applicable thereto. Through inadvertence, however, it did not contain a statement "that the annexed territory shall become a part of the school district of the city," required by Education Code section 2421.5 (Stats. 1958, 1st Ex.Sess, ch. 59). On March 30, 1959, this omission

having been discovered, the council adopted Resolution No. 21509, identical with the first resolution excepting that it supplied the missing phrase above quoted, it fixed a new hearing date, and it also provided:

"FURTHER RESOLVED, that Resolution No. 21,458, adopted February 9, 1959, be and the same is hereby rescinded."

Hearing was held, protests were heard, and thereafter Ordinance No. 243-CS was adopted approving the annexation.

Government Code section 35303 defines "uninhabited territory" as that containing fewer than 12 resident registered voters "at the time of the filing of the petition." Fewer than 12 registered voters did live in the area involved when the petition was filed on January 6, 1959, but on March 30, 1959, when the second resolution was adopted, the population had increased to 15 registered voters.

Appellants' position is that adoption of the second resolution constituted a "termination" and "abandonment" of all proceedings on the January 6, 1959, petition and commencement of new proceedings which were unauthorized because of the intervening population increase. Tacked onto, or perhaps merged into, this argument is the contention that the new resolution being such a "termination" all subsequent proceedings must fall for failure by the city council to follow Government Code section 35007. That section provides that the legislative body of a city shall have power to terminate any annexation proceeding but when it does so must hear protests which if found to reach 51 per cent will preclude renewed annexation proceedings for a one-year period.

No authority is cited supporting appellants' position that the proceedings above described did in fact constitute a "termination." They rely solely on utilization by the Stockton City Council of the word "rescind" in the second resolution and a dictionary definition thereof making it synonymous with "annul." This is followed by an argument which envisions unrestrained city councils hereafter adopting unlimited resolutions successively rescinding, readopting and resetting, thus effectively "freezing" annexation petitions of ancient date, preventing area development, barring annexation by rival municipalities, disconcerting school district finance planning and blocking progress generally.

Appellants' position is untenable. In the first place, adoption of the March 30th resolution did not purport to terminate the proceedings, nor was that the effect thereof. Rescission of

a resolution is not the same as rescission of whole annexation proceedings. The resolution is only one step in the proceedings. Effectually, the method adopted by the council was merely the correction of a procedural mistake.

Secondly, none of the dire consequences imagined by appellants are even claimed to have occurred here. The petition which launched these annexation proceedings had asked inclusion within the city school district. Failure to mention this in the first resolution was simply an oversight occasioned, no doubt, when its draftsman became temporarily lost in the labyrinths of California's elaborate and interwoven network of codes; and the net effect of the mistake and its correction was only a postponement of ultimate action by a matter of perhaps two months, a part of which delay was due to absence of a quorum. Actually the delay gave dissident landowners a longer time to marshal their opposition.

Denial of existence of a municipal power should not be predicated solely upon suppositious evil which might conceivably result from an abuse of that power. Courts can and will cure bureaucratic excesses. This is aptly stated by the court (per Peters, P. J.) in *People* v. *Town of Corte Madera*, 115 Cal.App.2d 32 [251 P.2d 988], at p. 44:

"There can be no doubt that the courts will interfere with an annexation proceeding that amounts to a fraudulent abuse of the powers conferred by the statute. *People* v. *City of Lemoore*, 37 Cal.App. 79 [174 P. 93]; *People* v. *City of Monterey Park*, 40 Cal.App. 715 [181 P. 825]; *City of Anaheim* v. *City of Fullerton*, 102 Cal.App.2d 395 [227 P.2d 494], are typical cases. These were cases where by various subterfuges the Annexation of Inhabited Territory Act was used to annex uninhabited territory (the procedure for annexation being radically different under each statute) or vice versa."

On the other hand, a too restrictive interpretation by the courts of the powers of a municipality in annexation proceedings would certainly destroy their broad beneficial public purpose. True, there is no provision in the Annexation of Uninhabited Territory Act expressly granting power to a city council to correct its procedural mistakes. Also true, and the rule is axiomatic, that a municipal corporation possesses only those powers expressly granted or fairly implied in, or incident to, powers expressly granted, together with those essential to declared objects and purposes. (1 Dillon on Municipal Corporations (4th ed.) § 89; *Von Schmidt* v. *Widber*, 105

Cal. 151, 157 [38 P. 682]; *Tax Factors, Inc.* v. *County of Marin,* 20 Cal.App.2d 79, 87 [66 P.2d 666].) But it is equally true, and well settled, that "where power is given to perform an act, the authority to employ all necessary means to accomplish the end is always one of the implications of the law." (*Bateman* v. *Colgan,* 111 Cal. 580, 587 [44 P. 238]; see also *Dickey* v. *Raisin Proration Zone No. 1,* 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324]; *In re Cathey,* 55 Cal.2d 679, 689 [12 Cal.Rptr. 762, 361 P.2d 426].)

In discussing the validity of a resolution calling an election in an inhabited area annexation proceeding in *People* v. *City of San Bruno,* 124 Cal.App.2d 790, 794 [269 P.2d 211], the court (per Peters, P. J.) stated:

". . . The courts should not so technically construe such statutes as to compel absolute and literal compliance with every word contained therein, because to do so, in many cases, would result in defeating the will of the majority in situations where no one was or could be misled." (See also *Jefferson Union School District* v. *City Council,* 129 Cal.App.2d 264, 267 [277 P.2d 104].)

█ Under the foregoing rules, the sound reasons for which are self-evident, we hold that the power of the city council seasonably to correct a mistake such as that made here and by the method here pursued is a power necessarily implied in, and to be inferred from, the powers expressly granted.

Having also held that adoption of the corrective resolution did not constitute a termination or abandonment of the annexation proceedings commenced with the filing of the petition of January 6, 1959, it is unnecessary to discuss points raised by appellants presupposing such a termination.

█ Turning now to the second question raised, the following further facts and statutory provisions should be noted: Concurrent with the annexation proceedings outlined above, the 1959 Legislature was in session in Sacramento. And it was not merely coincidental perhaps that Senate Bill No. 13 was introduced amending Education Code section 2421.5 to provide a new subdivision (c) (a former subdivision (c) being then relettered (d)), requiring that whenever the proposed annexed territory shall be part of a union high school district its governing board must agree to the transfer to the annexing city's school district, failing which the matter

is referred to the State Board of Education, whose decision is final. The bill was written, and subsequently enacted, as an urgency measure. (Stats. 1959, ch. 1100.) In its relation to Education Code section 2421.5 it was temporary. (A recodification of the Education Code was contemplated and occurred at the 1959 session with a renumbering of sections whereby the provisions of section 2421.5 became section 1722. Since Senate Bill No. 13, being an urgency measure, would become law before the recodification, the bill amended section 2421.5. It also amended section 1722, and provided that when the latter section took effect the former would be repealed automatically.)

As stated above, the Stockton City Council adopted its Ordinance No. 243-CS approving this annexation on June 8, 1959, and Senate Bill No. 13 did not take effect until June 19, 1959. However, on June 9, 1959, appellants commenced this proceeding in the San Joaquin County Superior Court, the filing of which prevented the submission of the ordinance to, and filing of it by, the Secretary of State under Government Code sections 35315 and 35316.

Appellants contend that, notwithstanding Ordinance No. 243-CS approving the annexation antedated enactment of Senate Bill No. 13 by seven days, their blocking of the filing of the ordinance by litigation negated the whole annexation proceedings. If the amended section 2421.5 *is* applicable, then, of course, appellants' position is correct because the city did not obtain the agreement of appellant school districts to cede the annexed territory to the Stockton city school district as required by section 2421.5 as amended.

The basis of appellants' contention is that the 1959 amendment to section 2421.5 by its express terms provides that it shall be applicable "to territory *proposed* to be annexed to a city." (Italics ours.) (Stats. 1959, ch. 1100, §2.) This, they say, is still territory "proposed" to be annexed until filing of the ordinance by the Secretary of State completes the annexation and the annexed territory becomes part of the city.

This argument disregards an express exclusionary clause in section 2421.5, as amended, stating that the provisions of subdivision (c) requiring school district agreement apply to any uncompleted annexation proceedings "except proceedings in which . . . the city legislative body . . . has approved the annexation by ordinance." Appellants seek to meet this diffi-

culty by saying that since this provision "conflicts" with the preceding paragraph of the section, making subdivision (c) applicable to all "proposed" annexations, insertion of the exclusionary clause may have been a mistake.

We find neither conflict nor mistake. By the time the proceedings reach the point of an ordinance approving the annexation they cease to be a "proposed" annexation; they become an accomplished fact. This is especially true where, as here, the ordinance by its terms became effective immediately pursuant to section 5 thereof and as authorized by article IV, section 17, of the Stockton City Charter. The insertion by the Legislature of the clause excluding application of the amendment to proceedings where the approving ordinance had already been adopted was merely a recognition of this thing accomplished.

Appellants' suggestion that the exclusionary clause may have been a mistake rests upon the urgency clause of the amendment which seems to be aimed at this very annexation, referring to "city annexations pending . . . to reach territory with high assessed valuations . . . . Such a procedure has a serious financial impact upon small, outlying school districts . . ." etc. We can readily believe that the proponents of the bill, having this annexation in mind, may have planned the bill to prevent it. But the exclusionary clause was not in the bill as originally introduced; it was placed there by amendment. From this it seems reasonably inferable that the legislature was willing to require agreement by affected school districts in future annexations and those "proposed" annexations which were still pending, but was not willing to nullify annexation proceedings which had reached the point of an adopting ordinance.

The exclusionary clause was not carried over into the permanent section 1722, but whether this was by accident or design does not affect the result here. The clause limiting application of the amendment to future annexations and "territory proposed to be annexed" *was* included in section 1722.

In *Rafferty* v. *City of Covina,* 133 Cal.App.2d 745, 754-755 [285 P.2d 94], it was held that Government Code section 35002.5, as amended, prohibiting certain strip annexations, did not apply to an annexation the ordinance approving which had been adopted before its effective date. The court's reasoning was that adoption of the ordinance was the final

legislative act on the part of the city; that filing by the Secretary of State was purely ministerial in character— routine procedure to give notice to the world that annexation had taken place, absence of which could not affect the validity of the annexation. Both rule and reason apply here.

 Claiming that the *Rafferty* case is no longer authority, appellants cite an amendment to Government Code section 35318 enacted one day prior to the filing of the *Rafferty* decision. It provides that where no effective date is included in the resolution setting an annexation petition for hearing "the territory is a part of the city for all purposes from the date of filing by the Secretary of State."

We do not regard this amendment as destroying the impact of the *Rafferty* decision. Adoption of the ordinance is *still* the last legislative act of the city. Filing by the Secretary of State is *still* ministerial. Adoption of the ordinance *still* takes the proceedings out of the category of "territory proposed to be annexed" even though the territory is not yet formally "a part of the city." The 1955 amendment to section 35318 merely furnishes a starting date for the assessment and levy of property taxes and for other municipal purposes.

This conclusion is the more inescapable when one remembers that filing by the Secretary of State is not within the control of the city council, but is controlled by the parties protesting the annexation when, as here, they prevent its accomplishment by litigation. To rule as appellants suggest would make the life of every unfiled, but approved, annexation expendable, not only by pending legislation but by all future legislative action during a possibly prolonged period when protesting factions are able to block filing by litigation. The present case illustrates this.

The judgment appealed from is affirmed.

Peek, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied January 3, 1962, and appellants' petition for a hearing by the Supreme Court was denied January 31, 1962.