[Civ. No. 21693. First Dist., Div. Two. Feb. 15, 1965.]

BAYSHORE SANITARY DISTRICT, Plaintiff and Appellant, v. CITY OF BRISBANE et al., Defendants and Respondents.

Thomas L. Bocci for Plaintiff and Appellant.

Reisch & Sherman and Conrad B. Reisch for Defendants and Respondents.

TAYLOR, J.—On this appeal, the Bayshore Sanitary District (hereafter referred to as District) urges that its petition for a writ of review, prohibition or mandate to set aside annexation proceedings of the City of Brisbane (hereafter referred to as City) under the Annexation of Uninhabited Territory Act of 1939 (hereafter referred to as the Uninhabited Territory Act) (Gov. Code, §§ 35300-35326) should have been granted. The District cites the following alleged errors by the trial court as grounds for reversal: (1) the conclusion that the territory annexed was uninhabited pursuant to section 35303 of the Government Code; (2) the conclusion that the territory annexed was a single parcel contiguous to the City; and (3) the restriction on the interrogation of certain witnesses.

The City's North Annexation No. 1 here in question consisted of about 11,000 acres bounded roughly as follows: on the east by the confluence of the county lines of San Mateo and Alameda Counties in the center of San Francisco Bay; on the north by the City and County of San Francisco; on the south by the City of Brisbane; on the southwest by unincorporated territory; and on the west by the City of Daly City. The James Lick or Bayshore Freeway, the old Bayshore Highway and the Southern Pacific Railroad tracks cross the territory from the north to the south, and Geneva Avenue from the east to the west.

About 60 per cent of the total area annexed consists of submerged lands immediately to the east of the James Lick Freeway. The remaining 40 per cent of the area is chiefly industrial, and contains the District's pumping plant, valued at $253,000, as well as substantial parcels owned by the Southern Pacific Company, the Pacific Gas and Electric Company (hereafter referred to as P.G.&E.) and the Stauffer Chemical Company.

Midway Village, a housing project comprising about 20 acres, is bounded on the west by Schwerin Street, on the north by Geneva Avenue, and on the east by a portion of P.G.&E. property included in the annexation. Schwerin Street is a dedicated public street running north and south. On the north, Schwerin Street is intersected by Geneva Avenue; further south by Savo Bay Road and Iwo Jima Road. The several roadways which divide Midway Village into block-like sections have been open to and used by the general public since 1943.

Midway Village is operated by the San Mateo County Housing Authority for certain military personnel stationed in the bay area and assigned to the housing project. The housing project consists of 435 furnished living quarters in small apartment buildings. The housing authority pays all of the utilities, maintains the gardens, lawns, apartments and street work, as well as a community recreation hall and play yard. Most of Midway Village, the northern portion located on the property leased from P.G.&E., as well as the southern portion located on the property owned by the housing authority, is not included in the territory annexed by the City.

The controversy on this appeal centers on two small strips of land owned by P.G.&E. and used by the tenants of Midway Village. The first consists of approximately one-quarter of

an acre at the boundary of the housing authority and P.G.&E. properties near Iwo Jima Road, where the housing authority built a maintenance warehouse and incinerator. In 1960, when P.G.&E. surveyed the boundary in order to construct a fence, it was discovered that the maintenance warehouse and a small portion of the incinerator encroached on P.G.&E. property. Thereafter, the housing authority and P.G.&E. entered into an agreement providing that upon 60 days' notice, P.G.&E. could revoke the housing authority's right to use the land encroached upon, and that on removal of the encroaching structures, the housing authority would reimburse P.G.&E. for the cost of relocating the chain link fence on the boundary line. The one-quarter of an acre P.G.&E. property subject to this agreement is included in the territory annexed by the City.

The second strip of land here involved is the northernmost portion of a roadway known as Saipan access road. This small portion of the road was included in the City's original annexation resolution. Saipan Road runs south from Geneva Avenue through the P.G.&E. property north of Midway Village containing P.G.&E.'s warehouse and storage yards, and then continues through the center of Midway Village. It serves as an access to the P.G.&E. property to the north and east of Midway Village, as well as one means of egress from Geneva Avenue to the housing project. It was used by P.G.&E., by the tenants of Midway Village, by the general public, and by the San Francisco Municipal Railway as part of its regular bus route No. 25 for the residents of Midway Village and is maintained jointly by P.G.&E. and the housing authority. The P.G.&E. property north of Midway Village was originally included in the territory proposed for annexation. Subsequently, this portion of the P.G.&E. property including the northernmost part of Saipan Road was excluded, as explained more fully below.

The annexation was conducted pursuant to the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, §§ 35300-35326). That act permits a city to annex "contiguous uninhabited territory" in proceedings initiated by resolution of the City's legislative body. We need not here outline the entire annexation proceedings required by the act and followed by the City. Suffice it to say that after the annexation proceedings had been duly instituted and during the pendency of this action in the trial court, the City passed Resolution

No. 76 amending the boundary of territory to be annexed by excluding Saipan Road and the P.G.&E. property north of Midway Vilage. The trial court thereafter permitted the City to further answer the District's petition herein by filing a supplemental return setting forth the City's resolution of exclusion. At the hearing, the court denied the District's motion to strike this supplemental return.

The main contention on appeal is that the trial court erred in concluding that the territory annexed was "uninhabited" under the provisions of the Uninhabited Territory Act of 1939.[1] To sustain this contention, the District attempts to show that those living in Midway Village housing project are registered voters residing within the annexed territory.

The District first argues that Saipan Road is an integral part of the residence of the registered voters in Midway Village and that the admission of City Resolution 76, excluding the previously included portion of the road, was error, as the character of the territory to be annexed was fixed for purposes of determining whether the territory was uninhabited, when the City first instituted the annexation proceedings (Gov. Code, § 35310).[2]

Government Code section 35313.5 provides: "If the city legislative body finds by resolution adopted pursuant to Section 35313.2 that a majority protest has not been presented in accordance with Section 35313 and if it elects to proceed it may make such changes in the boundaries of the territory proposed to be annexed as it finds proper, but it shall not include any territory outside of the boundaries described in the resolution giving notice of the proposed annexation nor shall it diminish the land area of the territory proposed to be annexed by more than 5 percent."

The District does not contend that the exclusion of Saipan Road diminishes the annexation area by more than 5 per cent nor that the City had not properly resolved that a majority protest had not been presented. While there have been

---

[1]Government Code section 35303: "For purposes of this article territory shall be deemed uninhabited if less than 12 persons who have been registered to vote within the territory for at least 54 days reside within the territory at the time of the filing of the petition for annexation or the institution of proceedings on motion of the city legislative body."

[2]"The legislative body of a city may initiate proceedings to annex the territory on its own motion without requiring a petition. If it does, the resolution giving notice shall declare that proceedings have been initiated by the legislative body and set forth its reasons for desiring annexation."

no prior cases interpreting section 35313.5 since its enactment in 1955 (Stats. 1955, ch. 768, § 2, p. 1261), the well settled rule is that the wisdom or expediency of a particular annexation is not a judicial question; that the courts can go no further than to see that the existing law is observed; and that subject only to express statutory limitations, the permissible shape, character or extent of the territory annexed is a political question (*People* v. *City of Palm Springs*, 51 Cal.2d 38, 45 [331 P.2d 4]). ██ The courts will interfere with an annexation proceeding only when it amounts to a fraudulent abuse of the statute (*Manteca Union High School Dist.* v. *City of Stockton*, 197 Cal.App.2d 750 [17 Cal.Rptr. 559]). ██ The District here has shown no abuse of existing statutes nor failure to comply therewith. Thus, the trial court did not abuse its discretion in allowing the City to file a supplemental return showing the amendment of the boundary.

The District next asserts that the trial court erred in concluding that the annexed one-quarter of an acre owned by P.G.&E., containing the maintenance warehouse and a portion of the incinerator used by the tenants of Midway Village, was not an integral part of Midway Village. The District concedes that, except for the one-quarter of an acre here in dispute, Midway Village was not included in the territory annexed, but argues that all of Midway Village was one integral residence unit; that the maintenance warehouse and the incinerator were an integral part of the residence of the tenants of Midway Village and, therefore, the territory here annexed was "inhabited" and could not be annexed by the City under the Uninhabited Territory Act.

The District cites *People* v. *City of Richmond*, 141 Cal. App.2d 107 [296 P.2d 351], and *City of Port Hueneme* v. *City of Oxnard*, 52 Cal.2d 385 [341 P.2d 318]. In *Richmond,* the boundary line transected a lot 100 feet wide by 500 feet deep so as to include the rear fourth portion thereof within the territory proposed for annexation. The dwelling house was located on the front of the lot and over 300 feet from the above boundary. This court (Division One) held that the trial court's finding that the premises consisted of a single undivided parcel of land, all of which was used for residential purposes, was supported by substantial evidence and that as a consequence the registered voters resident thereon were to be counted as residing in the territory proposed for annexation. Mr. Justice Wood, speaking for the court, said: "To

annex land is one thing; to strip it of its quality of being inhabited is quite another. The state of being inhabited is an attribute, a characteristic, a quality every bit as real as the state of being owned, possessed or farmed. Bisecting a lot by means of an annexation boundary line does not extinguish any of these qualities of the land. Each of the resultant portions continues an integral part of the whole in respect to ownership, possession, occupancy, use and residency.'' (P. 111.)

'' 'The fact of occupancy is not limited, manifestly, to the space occupied by the building or buildings, but extends to every portion of the single tract of which that space is an undivided part.' '' (Pp. 112-113.)

In the *Hueneme* case, the proposed annexation of uninhabited territory having been found to include 14 registered voters, the first boundaries were withdrawn and revised boundaries substituted ''. . . so as to exclude three houses inhabited by eight of the 14 registered voters.'' (P. 390.) These excluded houses were located on land which was in each case part of a larger parcel belonging to the same owner, the remainder of which larger parcel was included within the so-called ''second proposed'' territory for annexation. Mr. Justice Schauer held the attempted annexation void as an attempt ''. . . to exclude from such annexation the habitations of eight registered voters and thus to sever such habitations from the parcels of which they were an integral part'' (p. 391) stating: ''Whether the territory included within the proposed annexation was inhabited is a question of fact which does not depend upon whether the houses of the registered voters in which they ate and slept were within the boundaries of the proposed annexation but upon whether such houses were an integral part of the whole parcel (including the portion thereof which fell within the boundaries of the proposed annexation) so as to render the whole parcel inhabited. (*People* v. *City of Richmond* (1956) 141 Cal.App.2d 107, 111-114 [296 P.2d 351].)'' (P. 391.)

The essence of these cases is that where all of the land in question can be reasonably said to be used in connection with the home located thereon as an integrated whole, all of it is inhabited. The determination of whether and to what extent the land possesses such an integrated and unitary character rests upon an overall consideration of the facts of the particular case bearing upon ownership, location, physical

appearance, and use, and not on any precise formula, composed solely of units of land measurement expressed lineally or in quantity. An additional city lot, so designated on official records, lying adjacent to a home, may be an integral part of it as a garden; several acres in a rural area may be a part of a country estate for the additional recreational facilities or merely for the natural beauty which they add. These conditions are matters of common knowledge. The resultant place of residence is nonetheless indivisible although consisting of more than one lot, acre or other portion of land. Whether a property is an indivisible residence is a question of fact and the trial court's conclusion must be sustained if supported by any substantial evidence. (*Cothran* v. *Town Council*, 209 Cal.App.2d 647 [26 Cal.Rptr. 319].)

The evidence here shows that though it was used by the tenants of Midway Village, only 1 foot of the 5-foot by 5-foot incinerator was within the territory annexed. The maintenance warehouse was used chiefly by the housing authority to store its equipment, tools and furniture. Tenants did repair some furniture in the warehouse from time to time, but it could hardly be considered a common service facility. Both the small portion of the incinerator and the warehouse had been inadvertently located on land owned by P.G.&E. which permitted them to remain as an accommodation under an agreement terminable by P.G.&E. on 60 days' notice. In *Richmond, Hueneme* and *Cothran*, the properties which were severed and partly included within the annexed areas were held under a single ownership and occupied by registered voters whose homes were purposely excluded to make the territory "uninhabited." In the instant case, there is no division of land under a single ownership. Rather, the boundary line of the annexed territory follows the line dividing the P.G.&E. property from that of the housing authority. Under these facts and the views expressed in the authorities cited, the court was justified in its conclusions that neither the maintenance warehouse nor the 1 foot of incinerator were integral parts of the residence of the tenants of Midway Village, and that the tenants were not inhabitants of the annexed area.

The District's contention that a portion of a building of the Candlestick Housing Project including the requisite number of registered voters is included in the territory annexed, is clearly without merit. The City's witnesses testified

that all of the buildings in the Candlestick project were located in the part of San Francisco adjacent to the northern boundary of the annexed territory. The District's witnesses testified that the survey markers on the James Lick Freeway strongly indicate that a portion of one Candlestick building is within the territory annexed. Conflicts in the testimony are for the trial court. There was sufficient evidence to support its implied finding that all of the Candlestick project was located in the City and County of San Francisco.

The District contends that the trial court erred in concluding that the territory to be annexed was one entire area. It is argued that the territory consists of three substantial and clearly severable and distinguishable portions of uninhabited territory: the submerged lands east of the James Lick Freeway; the fill area between the major highways; and the area immediately west of the old Bayshore Highway containing the P.G.&E. and Stauffer properties. The District opines that because of the barriers, the separated parcels are not contiguous to the City. The argument is based on the omission of provisions similar to sections 35104[3] and 35105[4] of the Government Code, both of which are a part of the Annexation Act of 1913 (hereafter referred to as the Inhabited Territory Act), from the Uninhabited Territory Act of 1939.

*People* v. *Town of Corte Madera,* 115 Cal.App.2d 32 [251 P.2d 988], forecloses such a contention. The court pointed out that it was the rule long before the 1949 adoption of Government Code section 35105 that physical contiguity was not broken by the existence of highways, rights of way or other such barriers either in inhabited or uninhabited areas and that by thus expressly including this established rule of law in the Inhabited Territory Act of 1913, the Legislature could not have intended to adopt a contrary rule as to uninhabited territory. As stated by Mr. Justice Peters: ''Section 35105 must be construed as being merely declaratory of existing law as to the annexation of inhabited territory, and it in no way changed existing law as to the annexation of uninhabited territory.'' (Pp. 43-44.) This same

[3] ''To qualify for annexation, new territory shall be contiguous to: (a) The city, or (b) *Contiguous territory where the electors have voted for annexation to the city.*'' (Italics added.)

[4] ''Contiguous inhabited territory may be annexed as one parcel although divided by a road, stream, or other natural or artificial barrier or right of way.''

observation would apply equally to the adoption in 1949 of section 35104 of the 1913 Act also cited by the District. Furthermore, section 35104, by its very wording, could relate only to inhabited territories.

The District cannot rely on *Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447 [283 P.2d 57], and *United States Pipe & Foundry Co.* v. *City Council,* 150 Cal.App.2d 630, 635 [310 P.2d 431]. Those cases merely preclude severable and distinguishable uninhabited areas from being included with inhabited areas in a single overall annexation under the Inhabited Territory Act of 1913. To permit this would clearly thwart the intent of the Legislature in providing two distinct methods of annexation. The District's reliance on *People* v. *Town of Corte Madera,* 97 Cal.App.2d 726, 729 [218 P.2d 810], is likewise inappropriate, as there the city tried to annex three separate parcels of uninhabited territory, each of which was contiguous to the town as then bounded, but no one of which was contiguous to each of the others. In the instant case we have a single entire uninhabited area contiguous to the City boundary and subject to annexation under the Uninhabited Territory Act of 1939.

The record indicates that the trial court initially restricted the testimony of some of the District's witnesses as to their intent concerning the extent of their residence in Midway Village. However, they were recalled and allowed to testify fully that they considered all of Midway Village as their residence. In addition, all of the witnesses subsequently called were permitted to so testify. Thus, there was no prejudicial error.

The judgment is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 14, 1965.