TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-310 |
| of | : | |
| | : | July 20, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE CHARLES W. QUACKENBUSH, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a general law city offer an interest-bearing loan to its chief of police for the purchase of a home within the boundaries of the city?

CONCLUSION

A general law city may offer an interest-bearing loan to its chief of police for the purchase of a home within the boundaries of the city.

ANALYSIS

General law cities are those not having a "home rule" charter (see Cal. Const., art. XI, §§ 3, 5) and are governed by various statutory schemes enacted by the Legislature. (See, e.g., Gov. Code, §§ 34000-45345.)[1] We examine herein whether a general law city may offer an interest-bearing loan to its chief of police as part of his compensation package, enabling him to live within the city's boundaries for purposes of both community relations and public safety. We conclude that the city may do so.

With respect to "a city [not] operating under a charter . . . we must turn to the Constitution and general laws to ascertain its powers." (*Frisbee* v. *O'Connor* (1932) 119 Cal.App. 601, 603; see also, e.g., *Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 20-21; *Ex Parte Roach* (1894) 104 Cal. 272, 274; *Cereni* v. *City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1476.) An express statement of a power need not necessarily be found in the general laws. It has been held that "`. . . where a power is given to perform an act, the authority to employ all necessary means

---

[1]All section references are to the Government Code unless otherwise indicated.

to accomplish the end is always one of the implications of the law."'" (*Forest Lawn Co.* v. *City Council* (1963) 60 Cal.2d 516, 519-520; see also, e.g., *Manteca Union High School Dist.* v. *City of Stockton* (1961) 197 Cal.App.2d 750, 755.) Or as stated in *County of San Joaquin* v. *Stockton Swim Club* (1974) 42 Cal.App.3d 968, 972, "[*p*]*ublic agencies* possess not only expressly granted powers but also such implied powers as are necessary or reasonably appropriate to the accomplishment of the express powers. . . ."

Here, the relevant general laws are sections 36501, 36505, and 36506. Section 36501 provides that "[t]he government of a general law city is vested in: (a) a city council . . . [and other specified officers including] (d) [a] chief of police." Section 36505 provides that "[t]he city council shall appoint the chief of police. . . ." Section 36506 provides that "[b]y resolution or ordinance the council shall fix the compensation of all appointive officers and employees. . . ."

No constitutional or statutory provision specifically authorizes a city council to make a "home loan" to its chief of police. However, implicit in the right to appoint a chief of police would be the power to recruit such officer. Offering a home loan might enable the city to recruit the best possible candidate. (See *Hunter* v. *Ryan* (1930) 109 Cal.App. 736, 738.) Furthermore, once a chief of police has been appointed, the city's offering of a home loan might ensure his retention. As stated in the case law cited above, "authority to employ all necessary means to accomplish the end is always one of the implications of the law." (*Forest Lawn Company* v. *City Council, supra*, 60 Cal.2d at 519-520.) Finally, the city council has the express power to set the police chief's level of compensation. "Compensation" may include not only wages and salary but additional benefits such as health insurance and pension payments. (See *Grimm* v. *City of San Diego* (1979) 94 Cal.App.3d 33, 37; *Ware* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 44, affd. *sub. nom. Merrill Lynch, Pierce, Fenner & Smith* v. *Ware* (1973) 414 U.S. 117; *Foremost Dairies* v. *Industrial Accident Commission* (1965) 237 Cal.App.2d 560, 579-580; 67 Ops.Cal.Atty.Gen. 467, 468-470 (1984).) A compensation package that includes a home loan might ensure that the chief of police could afford to reside within the city. Again, such would be incident to an express power, the right to set compensation. A city council has wide discretion in determining the level of compensation for its officers and employees. (See *City and County of San Francisco* v. *Boyd* (1943) 22 Cal.2d 685, 690; *San Bernardino Fire & Police Protective League* v. *City of San Bernardino* (1962) 199 Cal.App.2d 401, 416; *Miller* v. *City & County of San Francisco* (1959) 174 Cal.App.2d 109, 111.)

Examining the home loan in question, we find that in 1992 the city loaned $325,000 to its police chief based upon the following statement of purposes:

"A. Developing a strong partnership between the police department and the community is one of the primary responsibilities of the Chief of Police. Such a partnership is best achieved by the Police Chief's involvement in a broad spectrum of community activities and by having a personal stake and interest in the quality of life shared by those who live in the community.

"B. The Police Chief is also the Director of Emergency Services. Since the 1989 Loma Prieta Earthquake, which limited travel between the Town and many outlying areas, the Town has developed a heightened awareness of the critical value of having the Police Chief available during the critical hours immediately following catastrophic events.

"C. The Town believes, therefore, that it is in the best interest of the community for the Chief of Police to reside within the geographic boundaries of the

Town, and recognizing the high cost of housing in the Town . . ., determines that it is in the Town's best interest to provide assistance in securing such housing."

Interest on the loan is "equal to the average rate earned annually by the . . . investment of municipal funds in the Local Agency Investment Foundation" adjusted annually in December of each year. The loan is not repayable until the chief retires, his employment is otherwise terminated, or he no longer uses the property purchased as his primary residence. The city's loan is secured by a second mortgage on the residence.

The critical question we must resolve is whether the home loan was validly executed in light of the proscription of Article XVI, section 6 of the Constitution. This constitutional provision states:

"The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State, or of any county, city and county, city, township or other political corporation or subdivision of the State now existing, or that may be hereafter established, in aid of or to any person, association, or corporation, whether municipal or otherwise, or to pledge the credit thereof, in any manner whatever, for the payment of the liabilities of any individual, association, municipal or other corporation whatever; nor shall it have power to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever; . . . ."

While seemingly broad, the constitutional proscription against making loans or gifts of public funds has been narrowly construed by the courts; loans or gifts are valid if they are for a public purpose even if there is an incidental private benefit. The courts have also deferred to the findings of the legislative body concerning the public purpose served by the loan or gift where it is not unreasonable or arbitrary.

In the leading case, *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 745-746, the court explained the operation of the predecessor constitutional provision, section 25 of article XIII, as follows:

"Article XIII, section 25, of the state Constitution provides that `The Legislature shall have no power . . . to make any gift or authorize the making of any gift . . . of any public money or thing of value to any individual. . . .'

"It is generally held that in determining whether an appropriation of public funds is to be considered a gift, the primary question is whether the funds are to be used for a `public' or `private' purpose; the benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom. [Citations.] The determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis. [Citations.]. . . ."

*Carleson* has been followed by numerous court decisions and opinions of this office. (See, e.g., *California Housing Finance Agency* v. *Elliot* (1976) 17 Cal.3d 575, 583 ["Under the public purpose doctrine, public credit may be extended and public funds disbursed if a direct and substantial public purpose is served and nonstate entities are benefited only as an incident to the public purpose"]; *Winkelman* v. *City of Tiburon* (1973) 32 Cal.App.3d 834, 845-846; 74 Ops.Cal.Atty.Gen. 159, 162 (1991).)

In our view, the stated reasons for the home loan in question constitute legitimate "public purposes" for making the loan. (Cf. *Ector* v. *City of Torrance* (1973) 10 Cal.3d 129, 135 [possible legitimate objectives of a city residency requirement include "enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations"]; *Wall* v. *Municipal Court* (1990) 223 Cal.App.3d 247, 250 [reasonable to require a traffic referee to reside within the city so that he would be acquainted with the city's streets, and it would increase public confidence in his decisions]; 75 Ops.Cal.Atty.Gen. 98, 102 (1992) ["Providing for on-campus faculty housing serves the educational purposes of the University. As a means of attracting and retaining the highest qualified professors and improving the learning environment, such a program helps fulfill the University's educational mission and purpose"].)[2]

In answer to the question presented, therefore, we conclude that a general law city may offer an interest-bearing loan to its chief of police for the purchase of a home within the boundaries of the city.

\* \* \* \* \*

---

[2]In response to *Ector*, the Constitution was amended in 1974 to prohibit any city or county, including those established by charter, or a public district from requiring "that its employees be residents of such city, county, or district; except that such employees may be required to reside within a reasonable and specific distance of their place of employment or other designated location." (Cal. Const., art. XI, § 10, subd. (b).) The amendment's purpose was to increase the number of qualified applicants for local government employment. (*Cooperrider* v. *Civil Service Commission* (1979) 97 Cal.App.3d 495, 501.) It has no application to residency requirements established by state law such as was present in *Wall*. Here, it would not be applicable, since the chief of police was not required to live within the boundaries of the city as a condition of employment.