TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION : | |
| : | No. 96-802 |
| of : | |
| : | November 20, 1996 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| ANTHONY S. Da VIGO : | |
| Deputy Attorney General : | |
| : | |

_____

JAMES R. WINSTON has requested this office to grant leave to sue in quo warranto upon the following:

ISSUE OF FACT OR LAW

May an individual, whose residence is situated on both sides of a city's boundaries and whose principal dwelling is located on the portion of the property outside the city's boundaries, occupy the office of city council member?

CONCLUSION

An individual, whose residence is situated on both sides of a city's boundaries and whose principal dwelling is located on that portion of the property outside the city's boundaries, may occupy the office of city council member.

PARTIES

JAMES R. WINSTON ("relator") contends that MARJORIE SMITH ("respondent") is unlawfully exercising the office of Town Council Member of the Town of Windsor, County of Sonoma.

MATERIAL FACTS

Since June 1978 respondent has owned and resided upon a 19.5 acre parcel in the County of Sonoma. A creek separates 3.5 acres from the remainder of the parcel. The principal dwelling unit, a water tower, a detached garage, and a barn are located on the larger segment. A smaller detached structure, used for sleeping, eating, and other domestic purposes but which lacks independent bath or kitchen facilities, is situated on the smaller segment. Also located on the smaller segment is a domestic water well from which the larger dwelling structure obtains its water. The same electric lines, telephone lines, and power meter serve both the larger and smaller dwelling units.

In July 1992 the Town of Windsor ("city") was incorporated as a municipality, with the city's boundary defined in part by the creek dividing respondent's property. The 3.5 acre segment was incorporated into the city, while the larger segment remains situated in unincorporated territory. At the time of incorporation, the Sonoma County Assessor assigned separate parcel numbers to respondent's property, which identified respectively the segment within the city and the segment outside the city.

Respondent's property bears a mailing address on a highway within the city, and the entire property is accessible by a driveway from within the city. Records of the Sonoma County Registrar of Voters identify the property by its address within the city, and accordingly respondent has registered to vote and continues to be registered as an elector within the city.

In December 1994 respondent was elected as a member of the town council after city and county officials, including the Sonoma County Counsel and Registrar of Voters, determined that she was properly an elector and registered voter of the city.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider initially whether there exists a substantial question of law or fact which requires judicial resolution, and if so, whether the filing of an action in the nature of quo warranto would serve the overall public interest. (79 Ops.Cal.Atty.Gen. 159, 160 (1996).)

Relator's application for leave to sue is predicated upon the contention that respondent resides outside of the boundaries of the city and is therefore ineligible to hold the office of city council member.

1.      Requirement of City Residency

It is clear that a city council member of a general law city must reside within the boundaries of the city. The city in question is governed by Government Code section 34882,[1] which provides as follows:

---

[1]Unidentified section references are to the Government Code.

"A person is not eligible to hold office as a member of a municipal legislative body unless he or she is otherwise qualified, resides in the district and both resided in the geographical area making up the district from which he or she is elected and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 10227 of the Elections Code."

More generally, subdivision (a) of section 36502 states in part:

"A person is not eligible to hold office as councilmember, city clerk, or city treasurer unless he or she is at the time of assuming the office an elector of the city, and was a registered voter of the city at the time nomination papers are issued to the candidate as provided for in Section 10227 of the Elections Code."

An "elector" is "any person who is a United States citizen 18 years of age or older and a resident of an election precinct at least 29 days prior to an election." (Elec. Code, § 321.) A "registered voter" is allowed to "vote at any election held within the territory within which he or she resides and the election is held." (Elec. Code, § 2000, subd. (a); see *Collier* v. *Menzel* (1985) 176 Cal.App.3d 24, 30; *Cothran* v. *Town Council* (1962) 209 Cal.App.2d 647, 661.)

"Residence" for purposes of voting means a person's "domicile" (Elec. Code, § 349, subd. (a)), which is defined as follows:

"The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning. At a given time, a person may have only one domicile." (Elec. Code, § 349, subd. (b).)

We have previously determined that in the absence of statutory expression to the contrary, a residence requirement for election remains as a condition to the continued right to hold office. (75 Ops.Cal.Atty.Gen. 26, 28 (1992).) Accordingly, if respondent does not qualify as a resident of the city, she is not qualified to hold the office of city council member.

2.  Residency in Parts of Two Precincts

We first examine whether a person's residency for purposes of being an elector and a registered voter may be affected by his or her property's "partition" by a political boundary. Here respondent's property was in effect "divided" by the city's boundary at the time of incorporation in 1992. The property is required by law to be in separate precincts. (Elec. Code, § 12222 ["No precinct shall be established so that its boundary crosses the boundary of any . . . incorporated city . . ."].)[2]

---

[2]Whether some restrictions may be placed upon respondent preventing her from switching back and forth between the two precincts--for administrative or other reasons--is beyond the scope of this opinion.

On the other hand, we have no doubt that respondent's "domicile" is located within the city's limits, and thus she may qualify as an "elector" and "registered voter" of the city for purposes of holding city office under the governing statutes. She "inhabits" the entire 19.5 acres as her residence and intends to remain. (See *Collier* v. *Menzel, supra*, 176 Cal.App.3d at pp. 30-31; *Bayshore Sanitary District* v. *City of Brisbane* (1965) 232 Cal.App.2d 259, 265-267; cf. *City of Port Heuneme* v. *City of Oxnard* (1959) 52 Cal.2d 385; *Cothran* v. *Town Council, supra*, 209 Cal.App.2d 647; *People* v. *City of Richmond* (1956) 141 Cal.App.2d 107.) She qualifies to hold city office under the literal terms of sections 34882 and 36502.[3]

The fact that respondent's domicile is also partly located outside the city's boundaries is not a disqualifying factor under any express statute. It is true that in *Gray* v. *O'Banion* (1913) 23 Cal.App. 468, 478, the court quoted from a text containing the following interpretive principles:

"`"When the boundary line between two localities passes through the residence of one whose domicile is at issue, if the portion of the house on one side of the line is sufficient to constitute a habitation by itself while the other portion is not, the first will be considered the domicile. If the line divides more equally, then that portion is deemed the domicile where the occupant mainly and substantially performs those offices which characterize his home (such as sleeping, eating, sitting, and receiving visitors); but in the event of a still closer division, then that part where he habitually sleeps is so considered in the absence of other facts showing a positively contrary intention."'"

The foregoing principles have been superseded by statutory law (see Civ. Code, § 22.2; 74 Ops.Cal.Atty.Gen. 86, 88 (1991)); Elections Code section 2034 provides:

"A person domiciled in a house or apartment lying in more than one precinct shall be registered as domiciled in the precinct designated by the county elections official on the basis of the street address or other precinct the county elections official considers appropriate unless the person requests . . . that he or she wishes to be domiciled for registration purposes in another precinct in which his or her house or apartment lies. . . ."

While this statutory language refers to "a house or apartment," it does not expressly require the dwelling to be comprised of a single, structurally integrated unit. Here respondent's larger and smaller dwelling units, served by the same telephone and power lines and used from time to time for sleeping, eating, and other domestic purposes, may well comprise an integral dwelling place. Applying Elections Code section 2034 under these circumstances, we do not find a compelling basis for dividing respondent's residence into multiple residences, necessitating a determination of domicile as between them. Rather, as provided in the statute, the street address (which in this case

---

[3]The administrative action of the Sonoma County Assessor, assigning two parcel numbers to respondent's property for purposes of assessing taxes, does not effectuate a subdivision of the property. (62 Ops.Cal.Atty.Gen. 147, 149 (1979).) The property remains an integral place for purposes of determining respondent's "domicile."

lies within the city) or the precinct requested by the individual in question (which in this case is located within the city) may determine the place of respondent's domicile for elector and voter registration purposes.

In any event, no substantial question of law is presented by relator's application with respect to respondent's place of domicile for purposes of sections 34882 and 36502.

3. The Public Interest

Finally, it is well settled that the mere existence of a justiciable issue does not establish that the public interest requires a judicial resolution of the dispute or that the Attorney General is required to grant leave to sue in quo warranto. (75 Ops.Cal.Atty.Gen. 287, 289 (1992).) As stated in *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 650: "The exercise of the discretion of the Attorney General in the grant of such approval to sue calls for care and delicacy. Certainly the private party's right to it cannot be absolute; the public interest prevails."

We believe it would not be in the public interest to burden the parties, the city, and the courts with this dispute, and that a contrary disposition would discourage participation by citizens in holding public office. (74 Ops.Cal.Atty.Gen. 26, 29 (1991).) Further, we are mindful of the general principle that ambiguities concerning the right to hold public office should be resolved in favor of eligibility. The court stated in *Helena Rubenstein Internat.* v. *Younger* (1977) 71 Cal.App.3d 406, 418:

"We consider disqualification from public office a significant civil disability. In California, the right to hold public office has long been recognized as a valuable right of citizenship. In 1869, in *People* v. *Washington*, 36 Cal. 658, 662, our Supreme Court declared that `[t]he elective franchise and the right to hold public offices constitute the principle political rights of citizens of the several States.' In *Carter* v. *Com. on Qualifications etc.*, 14 Cal.2d 179, 182, the court pointed out: `[T]he right to hold public office, either by election or appointment, is one of the valuable rights of citizenship. . . . *The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to the office. . . .*' (Italics added.) More recently, the high court, citing *Carter*, has termed the right to hold public office a `fundamental right.' (*Zeilenga* v. *Nelson,* 4 Cal.3d 716, 720; *Fort* v. *Civil Service Commission,* 61 Cal.2d 331, 335.) Thus, any ambiguity in a constitutional provision calling for forfeiture of an existing office and disqualification from holding public office should be resolved in favor of continued eligibility. . . ."

The proposed action would not be in the public interest, and leave to sue is therefore DENIED.

* * * * *