[Civ. No. 10452. First Appellate District, Division Two.—March 31, 1937.]

TAX FACTORS, INC. (a Corporation), Plaintiff and Appellant, v. COUNTY OF MARIN, Defendant and Appellant.

Charles A. Christin and T. J. Keegan for Plaintiff and Appellant.

George H. Harlan, N. Charles Brusatori, H. C. Symonds and T. T. Daniels for Defendant and Appellant.

STURTEVANT, J.—The plaintiff commenced an action on an alleged express contract to recover the balance claimed to be due for services rendered. The defendant answered and a trial was had before the trial court sitting without a jury. The court made findings of fact partly in favor of the defendant and partly in favor of the plaintiff and from the judgment entered thereon both parties have appealed.

In the early part of the year 1928 the plaintiff applied to the defendant for a contract " . . . to make a survey, classification and valuation of the assessable property of the County of Marin . . . " Later the plaintiff was given a contract covering a limited portion of the county—city of San Anselmo, city of Ross, and certain election precincts in Fairfax. The consideration was $6,000. That contract was performed and the plaintiff applied for a contract to render similar services for the rest of the property in Marin County. After negotiations on the 1st day of October, 1928, the board of Supervisors of Marin County adopted a resolution in words and figures as follows:

"RESOLVED, that Tax Factors, Incorporated, a corporation, be and it is hereby authorized in accordance with and agreeable to the contract entered into the 1st day of October, 1928, between the County of Marin and said Tax Factors, Incorporated, to make a survey, classification and valuation of the assessable property of the County of Marin, situate in the following described territory towit: Kentfield School District, Towns of Larkspur and Corte Madera, Larkspur School District, Town of Mill Valley and Mill Valley School District, Reed School District, Town of Sausalito and Sausalito School District, Town of Belvedere and Tiburon School District, Novato School District, Black Point School District, San Jose School District, Dixie School District, Burdell School District, Nicasio School District, San Rafael School District, San Pedro School District, and San Quentin School District.

"The same to be classified in the same manner as heretofore done by said Tax Factors, Incorporated, of the territory within the corporate limits of the City of San Anselmo, and the corporate limits of the City of Ross, together with that

territory within the boundaries of those certain General Election Precincts established by the Board of Supervisors, and known as Fairfax Precinct No. 1, Fairfax Precinct No. 2, Fairfax Precinct No. 3, and Fairfax Precinct No. 4, and as authorized by a resolution of this Board passed and adopted on the 14th day of February, 1928;

"AND BE IT FURTHER RESOLVED, that this assignment of territory under the terms of said contract, is upon the condition that said work will be completed by said Tax Factors, Incorporated, on or before the 1st day of June, 1929, and that said Corporation will make such survey, classification and valuation of the assessable property within the territory above mentioned in the manner specified in said contract and in this resolution for the sum of *not to exceed* $40,000.00."

The resolution had been prepared by the plaintiff and was by it presented to the board of supervisors. During the discussion an objection to the resolution was made because it did not limit the amount of the price to be charged. Thereupon the plaintiff's agent inserted the italicized words "not to exceed". The plaintiff undertook to prepare a formal written contract expressing the agreement of the parties. Later it tendered a written instrument dated October 1, 1928, which contains over forty folios but does not specifically refer to nor incorporate said resolution. No other resolution was passed by the board of supervisors and there is no evidence that the indenture just referred to was exhibited to any supervisors excepting Mr. Gardner, the chairman of the board. Nevertheless, the instrument was signed by the chairman, attested by the county clerk, and was also signed by the plaintiff, by Mr. Ramkin, the manager thereof. Said written instrument in no place directly or indirectly refers to the $40,000 limit in the resolution, but instead it contains under the heading "Estimate of Costs", the following: "For urban, suburban or subdivided lots eighty-five (85) cents per parcel, as in paragraph nineteen (19) of this agreement defined. For rural lands classified and mapped which are more valuable for agricultural or grazing than for subdivision purposes, the sum of ten (10) cents per acre. For buildings and structures as in paragraph nineteen (19) defined, the sum of $2.35 per structure." After said written instrument had been signed by the parties as above recited the plaintiff commenced the performance of the duties it had undertaken to perform. From time to time it received payments on ac-

count. In preparing its complaint it specified its claims as provided in the above-quoted "Estimate of Costs". It gave credit for $37,500 amounts received and asked judgment for $71,708.90 as the alleged balance due. The trial court ordered judgment in favor of the plaintiff for $2,500, the balance between $40,000, the amount specified in the resolution dated October 1, 1928, and $37,500, payments made. The plaintiff complains because the judgment was not enough and the defendant complains because the trial court awarded the plaintiff a judgment in the sum of $2,500, and earnestly contends that the contract was invalid and that the plaintiff should not have been given judgment in any sum whatever.

In its answer the defendant set forth certain allegations and asked that the formal written instrument prepared by the plaintiff should be reformed. The trial court made findings on those allegations in favor of the defendant. The plaintiff contends that in doing so the trial court erred. We think there is no merit in the contention. As to what should have been contained in the instrument as expressing the minds of the parties appears at once from an inspection of the resolution presented by the plaintiff to the board of supervisors and by that body adopted. That, in preparing the formal instrument, the plaintiff actually knew it made no reference to the resolution, but, on the other hand, departed therefrom, is at once clear. Mr. Gardner testified in effect that at the time he signed the formal written instrument he did not know it departed from the terms of the resolution and that it did not provide for carrying out the terms of that resolution. Section 3399 of the Civil Code provides: "When, through fraud . . . or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intentions of the parties, it may be revised on the application of the party aggrieved, so as to express that intention . . . " The facts of the instant case come clearly within the provisions of the rule just quoted. (*F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44, 49 [127 Pac. 163].) Furthermore, even though there had been an error in the findings complained of such error could not have been prejudicial to the plaintiff. The findings made enforce the contract expressed in the resolution. That resolution embodied the terms of the contract agreed upon by the plaintiff and by the board of supervisors.

■ The plaintiff complains because the trial court made findings that no oral orders were issued by the officers of the defendant to the plaintiff. An examination of the resolution discloses that no orders, written or oral, are therein provided for. The work to be done is specifically mentioned. The manner in which the work was to be done was also specifically mentioned—"the same to be classified in the manner as heretofore done by said Tax Factors, Inc., of the territory within the corporate limits of the City of San Anselmo, . . ."

The defendant complains because no surety bond was put up as provided in the formal written instrument. The furnishing of a bond was not mentioned in the resolution and is not to be found in any document except the formal written instrument. However, as we have shown above, that document was never shown to the board of supervisors and, so far as the record discloses, no member excepting Mr. Gardner ever heard of a covenant regarding a bond.

■ The defendant contends that the purported contract was void. (*Forward* v. *County of San Diego,* 189 Cal. 704 [209 Pac. 993].) The plaintiff contends that it was valid. (*H. D. Haley & Co.* v. *McVay,* 70 Cal. App. 438 [233 Pac. 409].) Both of the cases cited are helpful *arguendo,* but neither is determinative of the legal effect of the purported contract involved in this litigation. Under the clear terms of the resolution the plaintiff undertook "to make a survey, classification, and valuation of the assessable property" in the zones described in Marin County. In the record we find nothing claimed to be a survey, that is, in the sense of a measured plan and description of any portion of the county by a civil engineer. Two sheets of "classification" appear in the record. Each sheet purports to show (1) the net value of a specific lot; (2) the net value of the improvements thereon; (3) a diagram of the floor plan, (4) the nature of the building; whether commercial or otherwise, its size, and the kind of material used in its construction. No separate sheets appear as showing valuation. However, as just indicated, each classification sheet is not only descriptive of the building and lot but contains insertions regarding values. We think it follows that the plaintiff in fact undertook to make a "classification" and "valuation" of said assessable property. It is also clear that the two promises are made jointly as to each specific piece of property. In so far as

the plaintiff undertook to value each piece of property in Marin County, it was merely attempting to do and perform those things that the assessor is legally bound to do and perform. Therefore, the contract was, to that extent, invalid. (*Forward* v. *County of San Diego, supra.*) But, as we have just shown, the work to be done by the plaintiff in making classifications and in expressing values appeared on one and the same sheet. Section 1608 of the Civil Code provides: "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." It therefore follows that the entire contract before us in the instant case was void. (*County of Humboldt* v. *Stern*, 136 Cal. 63, 67 [68 Pac. 324].)

The statutes create the office of assessor, prescribe his duties, and fix his compensation. Among the duties imposed on the assessor the chief one is the duty of valuing all property in his county subject to local taxation. (Pol. Code, sec. 3628.) He is not entitled to financial aid through the board of supervisors (*Dougherty* v. *Austin*, 94 Cal. 601 [28 Pac. 834, 29 Pac. 1092, 16 L. R. A. 161]), nor may the board of supervisors relieve him by employing others to discharge the duties imposed by statute on him. (*Forward* v. *County of San Diego, supra.*) If a purported contract is attempted to be made in violation of the principle last mentioned it is absolutely void. (Pol. Code, sec. 4005.) Being void as to Marin County, no liability is created as on an implied contract. (*Zottman* v. *San Francisco*, 20 Cal. 96, 105 [81 Am. Dec. 96].)

As we understand the position of the plaintiff, it is this. It maintains that it was undertaking to render assistance to the board of supervisors when sitting as a board of equalization and not to act as an adjunct of the assessor's office. Accordingly, some effort was made to show that the documents prepared by the plaintiff were delivered to and deposited in the offices of the board and not in the office of the assessor. No claim was made that said documents were to be taken out of the county nor, indeed, that they were to be taken out of the courthouse. As between the county officers, they were public property. The particular room in which they were deposited is quite immaterial. No effort was made to show the documents prepared by the plaintiff were "maps and plat books". (Pol. Code, secs. 3658, 3658a, 4218.) Nor was the purported contract claimed to be founded on those

sections. However, both in the trial court and in this court the plaintiff placed much reliance on the rule stated in *H. D. Haley & Co.* v. *McVay, supra.* In that case the court discussed a contract under the terms of which the plaintiff undertook to make a "cruise and estimate of all timber on such patented lands . . . as shall be hereafter designated . . . and a classification, topographical survey, and report of such" lands. It will be noted at once that the work to be done by the Haley Company is a line of work, to do which, no office has been created, and the performance of which has not been imposed on any officer of the state or county. The value of standing timber depends on many factors. Among others are included the kind, species, amount, location, inside or outside of forest, the proportion of clear and rough stuff, and, above all, its accessibility; hence, the topography of the ground on which it stands. Being furnished with the data just mentioned, any officer seated at his desk can make accurate computations. Otherwise, his computations will be a bold guess. Comparing Haley's contract with the one in suit, it is clear there is no similarity whatever. Haley's reports were closely allied to the "maps and plats" authorized by section 3658 of the Political Code. The "classifications" of the plaintiff were but copy for an assessment roll, and, as we understand the record, they were so used. The Haley case rests, at least in part, on *Maurer* v. *Weatherby,* 1 Cal. App. 243 [81 Pac 1083]. That case involved these facts. The property, real and personal, in the city of Eureka, was subject to local taxation by the city of Eureka and also by Humboldt County. The assessor of the county of Humboldt had made his assessment. The assessor of the city of Eureka had made his assessment. The council of the city of Eureka, sitting as a board of equalization, desired information to determine whether any of the property on the city assessment roll should be equalized. It employed the plaintiff to make sheets comparing the two assessment rolls. The court held the council had the right to make the contract for its assistance in equalizing the assessments. In doing so, on page 245, it said: "When an assessment is too high the taxpayer may be depended upon to furnish the evidence upon which they may act in reducing it. But if there is an undervaluation, the assessor having recorded his best judgment on the face of the assessment roll, we have no doubt that the board may call to its aid such maps, abstracts, data, and information as will enable the

members to act fairly, intelligently, and legally in equalizing assessments. They are not limited to information and data the assessor may be able or willing to furnish." (Citing cases.) Acting on the same principle, a board of equalization no doubt can send for and examine probate appraisements, lists of recent sales and prices paid, etc. Such information is used in effect to cross-examine the assessor as to the correctness of his assessments. The question then arises, did the board of supervisors enter into the purported contract with the plaintiff for the purpose of having material, when sitting as a county board of equalization, with which to cross-examine the assessor? That was a question of fact which was submitted to the trial court. The resolutions and minutes of the board are silent as to the purpose. Two of the five supervisors were called as witnesses. The deposition of another was used on the trial, but was not introduced in evidence. Finding XVIII is as follows: "That it is true that the purpose of performing such re-valuation and re-assessment of said property was to afford to said Assessor additional compensation during his term of office other than that allowed him by law." We think it is clear, therefore, that the case falls within the doctrine of *Forward* v. *County of San Diego, supra,* and not within the doctrine of *H. D. Haley & Co.* v. *McVay, supra.*

At the present time such contracts as the one involved in the case before us are prohibited except as provided in sections 3673 and 3693 of the Political Code. At the time said contract was made, the statute was silent except as shown by certain provisions herein cited. To determine the powers of a municipal board the general rule applicable is quoted in *Von Schmidt* v. *Widber,* 105 Cal. 151, at page 157 [38 Pac. 682], as follows: "The rule, as stated by Mr. Dillon (1 Dillon on Municipal Corporations, 4th ed., sec. 89), and approved in various authorities, is that 'it is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.* Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation, and the power

is denied.' '' (Italics by Supreme Court.) That the power of duplicating the assessment rolls of any county is not "indispensable", is not open to debate. Without the exercise of such a power this state has functioned for nearly a century. Assuming merely for argument that there is a doubt regarding the existence of the power in question the plaintiff must lose because, "Any fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied."

The judgment is reversed, with directions to enter judgment in favor of the defendant. The defendant will recover its costs on these appeals.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1937, and an application by plaintiff to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1937.