[Civ. No. 18116.   First Dist., Div. One.   Apr. 29, 1959.]

JOHN EVOLA, Appellant, v. WENDT CONSTRUCTION COMPANY (a Corporation) et al., Defendants; UNITED PACIFIC INSURANCE COMPANY (a Corporation) et al., Respondents.

Sol S. Judson and Henry Muller for Appellant.

Weinstock, Anderson, Maloney & Chase and Harold J. Chase for Respondents.

HANSON, J. pro tem.*—The main question here is whether a corporate surety bond given by an owner and subdivider of land to the county of Contra Costa, pursuant to the re-

*Assigned by Chairman of Judicial Council.

quirements of an ordinance, protects a contractor so as to enable him to sue thereon for moneys due him for constructing, at the instance of the subdivider, the paving, curb, gutters, and tract drainage in the proposed subdivision.

Before the surety bond was given to the county, the plaintiff and the subdivider entered into a written contract by the terms of which the plaintiff was to be paid $28,439 in installments of $1,000 whenever a dwelling was completed and sold in the subdivision known as Westmoreland Park Number 2 until said sum was paid with interest.

An ordinance (XV) of Contra Costa County dealing with subdivisons provides that if the off-site improvements have not been completed before the final map is submitted to the board of supervisors for approval the subdivider must enter into an agreement *to complete the improvements within a specified time* and give a cash or surety bond. "The bond is to guarantee full payment of the cost of all required improvements and to be in lieu of any 'performance' bond otherwise required by law. . . ." The subdivider entered into such an agreement with the county and provided a surety bond in the penal sum of $25,000 executed by defendant United as surety. The plaintiff, as the contractor, completed the off-site improvements for the subdivider in the time allotted and they were accepted and approved by the board of supervisors. The plaintiff received no payments on account because the subdivider and owner defaulted on a trust deed he had executed and so ownership of the land passed to third parties upon its foreclosure.

Although the bond named the county only as the obligee, nevertheless, the plaintiff contends that the bond is a labor and materials payment bond running in favor of third party labor and material claimants. This contention is predicated upon the language of the ordinance, which in substance is likewise found in the bond, reading as follows: "The bond is to guarantee full payment of the cost of all required improvements and to be in lieu of any 'performance' bond *otherwise required by law,* the bond herein required being of greater surety than the performance bond." (Emphasis added.) It is conceded by the parties hereto that the bond is a statutory bond and not a common law bond. On the one hand, the defendant surety contends it is a performance bond and, on the other hand, plaintiff contends it is also a bond guaranteeing payment of the installation cost of the subdivision improvements made by plaintiff contractor.

The trial court sustained a demurrer without leave to amend to the first amended complaint. The plaintiff does not contend he should have been given a further opportunity to amend, but merely that the court erred in sustaining the demurrer on the ground no cause of action was stated.

At this point it should be stated that the subdivider, having lost ownership to the land, defaulted and judgment was entered against him. It is also of some interest to note that, in the contract between the contractor and the subdivider, the contractor agreed that he would "waive all lien rights upon the execution of an assignment of funds through Builders' Control Service by Wendt Construction Co., Inc., Subdivider." Such an assignment was made and, in a contract between Builders' Control and the contractor, the latter expressly agreed: "Contractor hereby releases any and all mechanic's lien rights which he has or may hereafter acquire on or against the real property described above; and Contractor does hereby waive and release any and all rights which he might otherwise have to levy attachment upon the real property described above regardless of any claim or claims he has or may have against the legal or equitable owners or owner of said real property described above." However, as no mention was made in the amended complaint of these facts we must ignore them in considering the demurrer.

In order to construe the statutory bond before us it is necessary to refer to the ordinance under which it was given and to the Subdivision Map Act originally enacted in 1937. In that connection it needs to be noted that the rules relating to the construction of statutes apply also to the construction of ordinances, inasmuch as an ordinance "has the same force within the corporate limits as a statute passed by the legislature itself has throughout the state." (*Ex parte Roach* (1894), 104 Cal. 272, 274 [37 P. 1044].) "All questions of . . . the construction of statutes . . . are to be decided by the court. . . ." (Code Civ. Proc., § 2102.)

The Subdivision Map Act provides that when the final map is tendered to the governing body (Bus. & Prof. Code, § 11611) it shall within a time limited "approve the map if it conforms to all the requirements of this chapter and of any local ordinance applicable at the time of approval of the tentative map, or any rulings made thereunder." At such meeting the "governing body shall also accept or reject any or all offers of dedication and shall, as a condition

precedent to the acceptance of any streets or easements, require that the subdivider, at his option, either improve or agree to improve the streets or easements in accordance with standards established by such governing body by local ordinance." To safeguard the acts thus required of the city or county involved, as the case may be, the Map Act by section 11612 provides that: "In the event an agreement for the improvement of the streets or easements is entered into, the governing body may require that *the agreement* shall be secured by a good and sufficient bond, or it may accept in lieu thereof a cash deposit, which bond or cash deposit shall be in an amount not in excess of the estimated cost of the improvement." (Emphasis added.)

It will be noted that section 11612 of the Map Act expressly provides that ". . . the governing body may require that *the agreement*" (emphasis added), if one is entered into by it and the subdivider, "shall be secured by a good and sufficient bond, . . . not in excess of the estimated cost of the improvement." No authority is given by the section which would authorize the governing body to enact an ordinance on the subject; none that would permit the county to expand the agreement to protect labor or material claimants.

Accordingly, we think the most cursory reading of the sections of the Subdivision Map Act makes it plain that the purpose of the Legislature in enacting section 11612 of the act was to protect counties, cities, and the public; it was not to protect suppliers of labor and materials. Undoubtedly, the Legislature had in mind that, as it is the duty of a city or county which has accepted a dedication of streets, alleys and the like to maintain them, that it should be entitled to demand a bond guaranteeing that the work of improvement would be done by the subdivider, where it had not been completed. As was aptly said in *Hoover* v. *County of Kern* (1953), 118 Cal.App.2d 139, 142 [257 P.2d 492] : "One of the main purposes of the Subdivision Map Act seems to be to require the subdivider to do the original work of placing the streets in a proper condition before the maintenance thereof is taken over by a city or county, and to relieve the public to this extent of the burden that would otherwise exist."

As was said in *Kelber* v. *City of Upland*, 155 Cal. App.2d 631, 636 [318 P.2d 561], "While the act specifically and impliedly permits the adoption of some local ordinances, *relating to design and improvement*, this is not an unlimited

permission but is restricted to such local ordinances as come within the limitations contained in the act. . . ." (Emphasis added.) ██ Nowhere in the act is there the slightest intimation that the governing body could protect by bond third persons such as suppliers of labor and materials on the project.

██ As was said in the *Tax Factors, Inc.* v. *County of Marin* (1937), 20 Cal.App.2d 79, at page 87 [66 P.2d 666]: "[I]t is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation—*not simply convenient, but indispensable.*"

██ Accordingly, we come to the conclusion that the type of bond which the Subdivision Map Act authorizes a city or county to require under the provisions of section 11612 is a performance bond and none other. This view is buttressed by the fact that in this same section (11612) *"a faithful performance bond* or cash deposit" (emphasis added) may be required by the governing body if the subdivider elects, at his option, not to enter into a contract with the governing body and instead to initiate and to consummate proceedings under an appropriate special assessment act.

Judgment affirmed.

Bray, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1959. Peters, J., was of the opinion that the petition should be granted.