[Civ. No. 18355.   First Dist., Div. Two.   July 13, 1959.]

FRANCELLA UPTON et al., Appellants, v. CITY OF
ANTIOCH et al., Respondents.

O. F. Fenstermacher for Appellants.

Tinning & DeLap and Max Wilcox, Jr., for Respondents.

DOOLING, J.—Plaintiffs appeal from a summary judgment entered in favor of defendants city of Antioch, P. K. Biglow its superintendent of streets, B. H. Maynard its director of public works and city engineer, and Phil E. Minner its city manager. The action is based upon injuries alleged to have been suffered when an automobile struck a protruding pipe in a street under construction in the city of Antioch.

From the affidavits presented on the motion for summary judgment it appears that on May 14, 1956, by resolution the City Council of Antioch requested the Board of Supervisors of Contra Costa County to appropriate $69,835 from the 1955-1956 Aid to Cities fund for the construction, purchase of right of way, and engineering costs for the improvement of a designated portion of Wilbur Avenue in said city, "the contract to be awarded by the Board of Supervisors, and the construction, engineering, and purchases of right of way to be under the direction and supervision of the Public Works Director of Contra Costa County."

On May 15, 1956, the board of supervisors of said county adopted a resolution which, after reciting that "(t)his Board deeming" said reconstruction of the designated part of Wilbur Avenue "is of general county interest," ordered that such work is authorized at a cost of $69,835, "said reconstruction to be done by contract to be awarded by the Board of Supervisors and the construction, engineering, and purchase of right of way to be under the direction and supervision of the Public Works Director of Contra Costa County."

Thereafter a contract was made by the county for this work with Antioch Paving Company and the work was being done by that company at the time the accident occurred.

It is respondents' theory upon which the trial court acted in granting summary judgment to the city and its officers that they cannot be responsible for the alleged dangerous condition of the street under construction since the county had assumed the entire control of the work and it was being done under county supervision by an independent contractor under contract with the county. Appellants counter with the argument that under the sections of the Streets and Highways Code under which these proceedings were undertaken there is no legal authority for the respondent city to relieve itself and its officers of their responsibility in the matter of the improvement of a city street.

The parties agree that the proceedings were taken under sections 1680-1683 of the Streets and Highways Code.

Section 1680 provides in part:

"The board of supervisors of any county may, by a resolution adopted by a four-fifths vote of its members, determine that any of the following activities are of general county interest and that county aid shall be extended therefor:

"(a) The laying out, opening, construction, improvement, maintenance, repair, or altering of all or any part of any street within a city or extending along or across the boundary of a city.

". . . . . . . . . . . .

"(e) The construction of the necessary pavements, curbs, culverts, bridges, tunnels, subways, viaducts, drainage facilities or structures incident to or a part of such street.

"(f) The acquisition of any real property or interest therein, rights of way or other property necessary for any of the purposes mentioned in this section."

Section 1682 provides:

"Thereafter and in accordance with such resolution the county may give aid in one or more of the following ways:

"(a) Contribute money.

"(b) Acquire and deliver material.

"(c) Furnish labor or engineering services.

"(d) Loan its road building machinery.

"(e) Pay or contribute money to be used for the payment of interest upon, or for the payment or redemption of, bonds, the proceeds of which have been used for, or which have been issued in payment for work mentioned in this article."

Appellants argue, and we must agree with them, that these sections do not contemplate or authorize a county to undertake such work itself, but only authorize the county to

contribute money, material, labor and engineering services and to loan its road building machinery to a city for use *by the city* for such street work to be done *under the city's supervision and control.*

It is settled law that the establishment and improvement of city streets is a municipal affair. (*City of Walnut Creek* v. *Silveira,* 47 Cal.2d 804, 812 [306 P.2d 453] and cases cited.) It is equally settled that counties have only such powers as are expressly granted to them and such others as are necessarily implied from those expressly granted. (Gov. Code, § 23003; *San Vicente etc. School* v. *County of Los Angeles,* 147 Cal.App.2d 79, 85 [304 P.2d 837]; *Tax Factors, Inc.* v. *County of Marin,* 20 Cal.App.2d 79, 87-88 [66 P.2d 666].)

The full purpose of the quoted provisions of the Streets and Highways Code may readily be accomplished by the county furnishing aid of the several kinds enumerated in section 1682 for use by the city under the city's supervision and control. There is no necessity for implying the additional power, not expressly granted, to the county to undertake such work itself. That power cannot be read into the quoted provisions either expressly or by necessary implication.

Other cognate sections of the Streets and Highway Code lend added force to this conclusion. Section 1684 provides expressly: "*The city* shall use all aid which it receives in the activities described in the resolution and *shall return to the county* any portion of such aid which is not thus used." (Emphasis ours.) This section clearly means that the city shall do the work, not the county.

The immediately following provisions of the Streets and Highways Code provide an express method for the county to take over and do such street work itself. Sections 1700 and 1701 authorize a county board of supervisors to declare by resolution, with the consent of the governing body of the city, "any highway in the county lying in whole or in part within a city to be a county highway." If this is done section 1702 provides: "Thereafter the board of supervisors of the county may improve and maintain such highway as other county highways are improved and maintained . . ."

The distinction between the right to give aid to the cities under sections 1680-1682 and to "improve and maintain" the streets which are made county highways under sections 1700-1702 is clear and obvious. In the latter case where the Legis-

lature intended to give the counties the power to do the work themselves it used apt and explicit language conferring that power. In the proceedings covered by sections 1680-1682 it gave no power to the counties except to furnish aid to the cities.

Since the attempt of the respondent city to delegate its powers and duties in this manner to the county finds no authorization in the law its unauthorized action cannot relieve it or its officers of their duty of safely maintaining the streets of the city. Nor can the unauthorized delegation by the county to the contractor have any greater effect.

Judgment reversed.

Kaufman, P. J., and Draper, J., concurred.