[Civ. No. 45499. First Dist., Div. Three. Aug. 12, 1980.]

GERALD FISHER et al., Plaintiffs and Appellants, v.
MORRISON HOMES, INC., Defendant and Respondent.

---

---

COUNSEL

Seyranian & Seibert and Hal F. Seibert for Plaintiffs and Appellants.

Van Loucks & Hanley, Remsen C. Barnard and Geoffrey Van Loucks for Defendant and Respondent.

---

OPINION

DEARMAN, J.*—In August of 1973, six-year-old Brian Fisher was struck and killed by an automobile as he rode his bicycle from a pedestrian pathway out into traffic on the intersecting street. The pathway was designed and constructed by defendant and respondent Morrison Homes, dedicated to the City of Pleasanton, and accepted as public property in 1965.

Brian's parents brought a wrongful death action against several defendants, among them Morrison Homes, suing on theories of negligence and strict liability. Morrison Homes was granted a nonsuit after opening argument (Code Civ. Proc., § 581c) on facts which we must accept as true for the purpose of review. (*Smith* v. *Roach*) (1975) 53 Cal.App. 3d 893, 897 [126 Cal.Rptr. 29]; *Timmsen* v. *Forest E. Olson, Inc.* (1970) 6 Cal.App.3d 860, 867-868 [86 Cal.Rptr. 359].)

I.

The facts alleged are as follows.

Morrison Homes originally built the pathway as part of a subdivision, intending that it be used by both pedestrians and cyclists. Failure to incorporate barriers at the point of intersection with adjoining streets

---

*Assigned by the Chairperson of the Judicial Council.

proximately caused Brian Fisher's death and constituted either negligence or a defect in design for which the developer may be held strictly liable.

Morrison Homes was also negligent in 1970 when it failed to act on a letter it received from a local resident, Nadine Beckett, who complained about the absence of barriers on the pathway and asked that something be done to prevent children from riding their bicycles out into the street. Morrison Homes negligently failed to advise the city of the concerns expressed in the letter or otherwise to alert it to the existence of the dangerous condition, proximately causing Brian Fisher's death.

In August of 1973, Brian Fisher rode his bicycle down the pathway, over the sidewalk and curb, and out into Crestline Way, where he was struck and killed by an oncoming car. Plaintiffs and appellants, as his parents and sole heirs at law, are entitled to sue for his wrongful death. (Code Civ. Proc., § 377.)

Morrison Homes moved for and was granted a nonsuit based on two cases, *Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77 [107 Cal. Rptr. 727] and *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720 [84 Cal.Rptr. 11], which discuss the liability of real estate developers in suits for inverse condemnation. The trial court read these cases as absolving developers from liability in tort as well. For reasons explained below, we find this reading in error.

In addition, the trial court failed to assess plaintiffs' allegation that Morrison Homes was liable for negligently failing to warn the city of the existence of the dangerous condition on the pathway. This theory too, we find, is entitled to further development.

While none of plaintiffs' causes of action may ultimately survive a motion for summary judgment or a jury's careful scrutiny, we hold that their merit may not be prematurely resolved as a matter of law on a motion for nonsuit.

## II.

██    Dedication is a grant and a gift of an interest in land by a private owner for the public use. (*Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 240 [267 P.2d 10].)  ██    It may be accomplished by adverse use or under the provisions of the Subdivision

Map Act (Gov. Code, § 66410 et seq.) or under a more general statute not yet enacted when the events relevant to this suit took place. (Gov. Code, § 7050.)

Although plaintiffs have not alleged the circumstances of the dedication and acceptance of the subject pathway, we may assume from the context that it was accomplished under the terms of the Subdivision Map Act.

■ The purpose of the Subdivision Map Act is to require the subdivider to "'do the original work of placing streets in proper condition before maintenance thereof is taken over by the city or county, and to relieve the public to such extent of the burden that would otherwise exist.'" (*Evola* v. *Wendt Construction Co.* (1959) 170 Cal.App.2d 21, 25 [338 P.2d 498], citing *Hoover* v. *County of Kern* (1953) 118 Cal.App. 2d 139 [257 Cal.Rptr. 492].) It does not necessarily follow, however, that such property must be maintained by the public entity after dedication (61 Ops.Cal.Atty.Gen. 466, 468 (1978)). That entity may in fact require that the property be maintained by a private individual (*id.* at p. 469), presumably either the original donor or its successors in interest.

As a consequence, public liability for injuries occurring on dedicated land may at times be unclear and the distribution of liability between the public and the private developer not susceptible of easy definition. Nor is the public entity's participation in the development, approval, or implementation of the building plans necessarily so pervasive as to exonerate the private developer for its own negligence. ■ We therefore regard as untenable the position respondent urges upon us and decline to confer absolution on all landowners who dedicate their property to the public use from damages which may thereafter occur, regardless of the extent of their culpability. Nor have we been able to find any authority for such an extreme position.

The two cases respondent relies upon, *Blau* v. *City of Los Angeles, supra*, 32 Cal.App.3d 77 and *Sheffet* v. *County of Los Angeles, supra*, 3 Cal.App.3d 720, cannot provide any guidance in this context. Both involved suits for inverse condemnation and, quite rightly under constitutional principles, held the public entity and not the private developer liable for taking of private property for a public use. (See *Anderson* v. *Fay Improvement Co.* (1955) 134 Cal.App.2d 738, 745-746 [286 P.2d

513].)[1] In both cases, potential developer tort liability was carefully distinguished.

*Blau* began as a suit against the City of Los Angeles and a private developer for negligent excavation of certain property which caused damage to plaintiff's property in a landslide. The excavation had been undertaken by defendant developer upon approval by the city for the purpose of constructing a road many years before. The road was later dedicated to the city.

Plaintiffs apparently abandoned their negligence claims for, as the Court of Appeal pointed out, "[a]lthough the pleadings in the instant case do not expressly mention 'eminent domain' or 'condemnation,' inverse or otherwise, the evidence in the case converted it into a suit for inverse condemnation and it was submitted to the jury solely on that theory." (32 Cal.App.3d 77, 89.) The developer was granted a nonsuit based on the rule followed in *Sheffet* that "[i]n the absence of something in the nature of a protective covenant, where a public entity approves the plans for a subdivision, . . . and there is damage to adjacent property as a result of those improvements, the public entity, not the subdivider, is liable in an inverse condemnation suit." (3 Cal.App.3d 720, 735.)

*Sheffet* involved a suit brought by an owner of real property for damages caused by surface waters and mud draining across and onto his property from the land owned by defendant Gibco Construction via streets owned by defendant County of Los Angeles. Plaintiff further sought an injunction ordering both defendants to stop the flooding and take corrective steps to prevent its recurrence.

Gibco had constructed a subdivision on the hill above plaintiff's property, including two streets. It then dedicated the streets to the county. This construction greatly reduced the available surface area capable of absorbing rainfall and the increased runoff was funneled through the streets onto plaintiff's property.

The trial court awarded plaintiff nominal damages against each defendant. This portion of the judgment was not appealed. It also granted the requested injunctive relief against both defendants.

---

[1]See also Code of Civil Procedure section 1240.020, only persons statutorily authorized may exercise the power of eminent domain. Clearly a private developer does not ordinarily fall within this category.

The Court of Appeal disagreed with this latter portion of the judgment, citing the rule imposing inverse condemnation liability on the public entity to the exclusion of the private developer (3 Cal.App.3d at p. 734), but it refused to make the very leap in logic made by the trial court here. Noting that defendant Gibco had waived appeal of the damage award and that there was no evidence of negligence, the *Sheffet* court contrasted a situation where active negligence is alleged against a developer, saying, "We can readily envisage a situation where a subdivider, during development of the property, may have a duty to prevent ground erosion and the depositing of soil or debris on the land of the lower owner. It would seem reasonable to require a subdivider to take preventive measures to preclude such incidents, and nothing we say here negates responsibility for such negligence, but that is not encompassed in the problem now before us." (3 Cal.App.3d at p. 736.)

This precise question, albeit in a different factual context, has been placed squarely before us here. We are persuaded that in this situation, where defendant's motivation for dedicating property to public use was not altogether charitable, but rather was prompted by the desire to enlarge the profitability of its enterprise by creating access to its homes via publicly maintained streets, its relationship to the city is the same as that of a private contractor. This means in substance that a developer performs a service[2] in designing and constructing improvements to the real property it eventually deeds away and must accept responsibility for prededication negligence.

We feel constrained to take this approach. It is easy to imagine that a developer, anxious to cut costs, might feel less compelled to perform up to the standards of his profession were immunity automatically conferred upon dedication to the city. Given the exigencies of municipal finance and bureaucracy and the roadblocks set up by the Tort Claims Act (Gov. Code, § 810 et seq.) any other rule might ultimately lead to abuse and inequity.

Moreover, we must adhere to the maxim, embodied in Civil Code section 1714, that "everyone is responsible... for an injury occasioned to another by his want of ordinary care or skill ...." Reminded that "in the absence of statutory provision declaring an exception to [this] fundamental principle..., no such exception should be made unless

---

[2]For this reason, plaintiffs' strict liability theory must fail. Highways, and by analogy, pathways, are not "products" placed in the stream of commerce for profit, but are more akin to a service. Strict liability principles are therefore inapposite.

clearly supported by public policy" (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]), we find public policy weighs against the exception proposed here.

Nor do we believe we are imposing an unreasonable burden on the real estate development and construction industries in reaching this result. Potential liability would be cut off under most instances after four years in actions for injuries caused by patent defects (Code Civ. Proc., § 337.1) and after 10 years in actions for injuries caused by latent defects (Code Civ. Proc., § 337.15).[3]

■ Further, the long-established rule in California, adopted with virtual unanimity in other jurisdictions as well (Annot. (1966) 9 A.L.R.3d 382, 385), provides that a public contractor is liable for negligence and wilful torts, but not for damages necessary or incidental to carrying out work done in accordance with plans and specifications and under the supervision and direction of a public body. (*Id.* at p. 386; *Alisal Sanitary District* v. *Kennedy* (1960) 180 Cal.App.2d 69, 82 [4 Cal.Rptr. 379]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 362 [28 Cal.Rptr. 357]; *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 809-810 [110 Cal.Rptr. 543] and cases cited.)

There appears to be no reason why private developers who later dedicate improved real estate to a public entity should not enjoy the same protection. We can conceive of a situation where the degree of involvement by the public entity in the planning and execution of a project may be tantamount to requiring adherence to its specifications. In that case, the developer will not be liable. Elsewhere, the degree of participation will be less and responsibility for subsequent harm shifted accordingly.

■ Thus, the nature of the relationship created between the City of Pleasanton and Morrison Homes through the process of design, construction, dedication and acceptance becomes a determinative issue of fact. All we know from the record is that Morrison Homes dedicated an allegedly defective pathway to the city and that the city accepted it for public use. This, we hold, is insufficient to resolve the question of degree of municipal responsibility for the defect-causing negligence. We

---

[3]The applicability of these sections has not been considered by the parties. We therefore do not address the possibility that plaintiffs' suit may not have been timely filed.

anticipate that facts developed on remand will enlighten the trier of fact in this regard.

## III.

■ Finally, we must consider the viability of plaintiffs' cause of action based on negligent failure to advise the city of the contents of the letter it received from Ms. Beckett in 1970. We hold that a special relationship between Morrison Homes and the city, akin to that of a vendor and purchaser or parties to a contract involving the improvement of real property, arose out of the process of dedication and acceptance. It follows that Morrison Homes may under certain circumstances be held liable for foreseeable injuries occurring as a result of failure to warn the city of defects in dedicated property. Whether this case presents such a factual setting remains to be seen.

"It is established law, at least in the exercise of ordinary care, that one is under no duty to warn another of a danger equally obvious to both. [Citations.]" (*Marshall v. United Airlines* (1973) 35 Cal.App.3d 84, 90 [110 Cal.Rptr. 416].) We believe that a question of fact exists as to whether the risk allegedly posed by the absence of barriers on the pathway was equally obvious to both the city and to Morrison Homes or whether the receipt of the letter created special knowledge in the latter obligating it to alert the city.

Plaintiffs, it seems, will have difficulty proving causation in this instance, but that is of no concern to us at this point.

For the foregoing reasons, the order dismissing plaintiffs' suit is reversed.

Scott, Acting P. J., and Feinberg, J., concurred.