[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to P.L. 151 et seq. the defendant D.J. Carreiro, Inc., (defendant) herein moves this court to strike counts nine CT Page 1004 and ten of the Revised Complaint dated April 3, 1992. In the alternative the defendant moves that counts eleven and twelve be stricken.
Counts nine and ten pertain to a products liability claim against the defendant. The basis of the defendant's claim is that the Connecticut products liability statute 52-572n, et seq., provides a statutory remedy to recovery against product sellers for injuries caused by a product. The statutory scheme does not define the term "product." The defendant claims that without the factual predicate of a "sale" of a "product", the plaintiff has no basis for asserting a claim under 52-572n, et seq.
ISSUES
1. Should counts nine and ten of the plaintiff's revised complaint dated April 3, 1992 be stricken on the ground that they do not concern the sale of a "product" under the product liability statute, CGS 52-572m et seq.?
2. In the alternative, in the event that counts nine and ten are not stricken, should counts eleven and twelve be stricken on the ground that the product liability statute constitutes the plaintiffs' exclusive remedy?
FACTS
On April 3, 1992, the plaintiffs, Megan Hines (by her mother and next friend Catherine Hines) and Catherine Hines (individually), filed a fourteen count revised complaint against the defendants, JMJ Construction Co., Inc., a construction company; Dart Hill Realty, Inc., a real estate corporation; D.J. Carriero, Inc. (defendant herein), a concrete subcontractor; and the Town of South Windsor, seeking recovery for severe injuries allegedly suffered by the plaintiff Megan Hines after falling off her bicycle on October 27, 1990. The plaintiffs allege that the accident was due to the defective condition of the ramp, curb cut, sidewalk, and/or surrounding ground at the northwest corner of Stephanie Drive and Jessica Drive in the Mountainview Estates subdivision in the Town of South Windsor.
Counts one, two, three and four are brought against defendant JMJ Construction, the builder of single-family homes CT Page 1005 known as the Mountainview Estates, and are based on product liability and nuisance. Counts five, six, seven and eight are brought against defendant Dart Hill Realty, Inc., the owner of the sidewalk, ramp, and surrounding ground at the northwest corner of Stephanie Drive and Jessica Drive, and are based on negligence and nuisance. Counts nine, ten, eleven and twelve, the counts at issue, are brought against defendant Carriero, the concrete subcontractor that designed, constructed, prepared, assembled, installed and/or placed the concrete sidewalk, curb cuts and ramp at the northwest corner of Stephanie Drive and Jessica Drive, and are based on product liability and nuisance. Counts thirteen and fourteen are brought against the Town of South Windsor and are based on the defective highway statute.
In counts nine and ten of their complaint, the plaintiffs allege that the defendant Carriero, as the concrete subcontractor, designed, constructed, prepared, assembled, installed, and/or placed the concrete sidewalk, curb cuts and ramp that connected the sidewalk to the pavement of the road and as such was a product seller or manufacturer pursuant to General Statutes 52-572m. The plaintiffs further allege that Megan Hines' fall and the resulting injuries were caused by the construction, design, preparation, assembly, installation, and warnings relating to the defective and dangerous sidewalk, concrete ramp, curb cut and surrounding ground and that the defendant Carriero is liable pursuant to General Statutes52-572m. The plaintiffs, based on their product liability claims, seek damages and punitive damages pursuant to General Statutes 52-240b.
In counts eleven and twelve of their complaint, which are characterized as nuisance claims, the plaintiffs allege that Megan Hines used the sidewalk, ramp, curb cut and surrounding ground at the corner of Stephanie Drive and Jessica Drive in the exercise of a public right. The plaintiffs further allege that defendant Carriero created and maintained the sidewalk, ramp, curb cut and surrounding ground and that Megan Hines' fall and resulting severe injuries were caused by the defendant Carriero's negligence and carelessness. Hence, the plaintiffs seek damages based on their nuisance claims.
On September 15, 1992, the defendant Carriero filed a motion to strike counts nine and ten, the product liability claims, or in the alternative, counts eleven and twelve, the common law nuisance claims, of the revised complaint dated April CT Page 1006 3, 1992. As required by Practice Book 155, the defendant Carriero has filed a memorandum in support of its motion to strike and the plaintiffs have timely filed a memorandum in opposition.
In its memorandum of law, the defendant Carriero sets forth the reasons for its motion to strike.[1] The defendant Carriero asserts that the allegations in counts nine and ten are insufficient to allege a product liability action under General Statutes 52-572m since there is no sale of a "product." The defendant Carriero further asserts that the plaintiff, in referencing the product liability statute, form a legal conclusion by implicitly alleging that the sidewalk is a "product" and that therefore, counts nine and ten should be stricken. In the alternative, the defendant Carriero contends that, if the court does not strike the product liability claims, counts eleven and twelve should be stricken since the product liability statute, General Statutes 52-572n, constitutes the plaintiffs' exclusive remedy.
DISCUSSION
The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). A trial court, in properly passing on a motion to strike, will consider only those grounds specified in the motion. Blancato v. Feldspar Corporation, 203 Conn. 34, 44, 522 A.2d 1235 (1987). The court is limited to the facts alleged in the underlying pleading. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990).
The motion to strike admits all facts well-pleaded, but does not admit legal conclusions or truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). If facts provable under the allegations of the complaint would support a cause of action, the motion to strike must fail. Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989). In deciding upon a motion to strike, the court shall construe the facts alleged most favorably to the pleader. Gordon v. Bridgeport Housing Authority, supra. The facts will be viewed broadly "including the facts necessarily implied by and fairly provable under them." Schmidt v. Yardney Electric Corp., 4 Conn. App. 69, 74, CT Page 1007 495 A.2d 512 (1985); see Zeller v. Mark, 14 Conn. App. 651, 654,542 A.2d 752 (1988).
"On October 1, 1979, a modified version of the Model Uniform Product Liability Act (UPLA) became part of statutory law of the state of Connecticut." Robert J. Yules, "An Analysis of Connecticut's New Product Liability Law," 56 Conn. B.J. 269 (1982). The purpose of the UPLA was to assure that persons harmed by unreasonably unsafe products would be adequately compensated for their injuries. Id.; see also L. Frumer M. Friedman, Products Liability, Chap. 3E, 6E, 19-20 (1986).
Under Connecticut law, similar to the UPLA, a "product liability claim" includes "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of any product." General Statutes 52-572m(b) (1986). (emphasis added). Claims under the ambit of the product liability statute include all actions based on strict liability in tort, negligence, breach of implied or express warranty, breach of duty to warn or instruct, misrepresentation or nondisclosure. General Statutes52-572m(b).
General Statutes 52-572n(a) provides that product liability claims may only be asserted against product sellers. See Regal Steel, Inc. v. Farmington Ready Mix, Inc., 36 Conn. Sup. 137,414 A.2d 816 (Super.Ct. 1980). The term "product seller" for purposes of claims brought under the Product Liability Act is defined as
 any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use consumption. The term `product seller' also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.
General Statutes 52-572m(a). A manufacturer is one who designs, assembles, fabricates, constructs, processes, packages or otherwise prepares a product prior to its sale to a user. General Statutes 52-572m(e). The legislative history of the Connecticut statute states that "the definition of product CT Page 1008 seller is taken verbatim from the draft uniform product liability law, U.S. Department of Commerce." 22 S. Proc., Pt. 14, 1979 Sess., p. 4636. Whether the defendant is a "product seller" for purposes of the Product Liability Act is a matter of law for the court to determine. See Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 72, 579 A.2d 26 (1990).
Connecticut's product liability law does not define the term "product." Zichichi v. Middlesex Memorial Hospital,204 Conn. 399, 403, 528 A.2d 805 (1987); Worrell v. Sachs,41 Conn. Sup. 179, 180, 563 A.2d 1387 (1989, Freedman, J.). However, the UPLA, on which the Connecticut Act is based, defines "product" as "any object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce." Frumer 
Friedman, supra, 31.
In the case at bar, the question presented is whether defendant Carriero, the concrete subcontractor, is a "product seller" as defined by the Act and whether defendant Carriero provided services or sold a "product" under the Product Liability Act.
In their memorandum in opposition to the motion to strike, the plaintiffs argue that the language of the Product Liability Act is broad enough to encompass the activities of defendant Carriero in connection with this action. The plaintiffs provide no case law in support of their argument and note that there are no post-Act officially published cases in Connecticut which address whether a subcontractor who is alleged to have designed, constructed, prepared, assembled, installed and/or placed a sidewalk is a seller/manufacturer of a product.
In its memorandum in support of the motion to strike, the defendant Carriero contends that the plaintiffs have no basis for asserting a claim under General Statutes 52-572m et seq. since the transaction was not for the sale of a product, but instead, constituted a contract for personal services. Defendant Carriero contends that paragraphs three of counts nine and ten describe Carriero's function as performing a service that included the "forming, pouring, placement, and/or finishing of concrete sidewalks and ramps." The defendant relies on the pre-Act case of Gibson v. Sonstrom, 2 Conn. L. Trib. No. 103, p. 3 (Super.Ct., November 3, 1976, Missal, J.) which held that the sale of a finished asphalt driveway did not come within the CT Page 1009 scope and meaning of a "product" even though the plaintiff claimed that the completed driveway was sold as "the sum of the design, material and installation efforts of the defendant."
The court will not rely on the UPLA definition of a "product." Although the Connecticut product liability statute is based on the UPLA, the UPLA "product" definition was not specifically incorporated in the definition section of the Connecticut statute. Therefore, the court will review the case law and the policies behind strict tort liability to determine whether counts nine and ten involve the sale of a "product" by a "product seller" as required by the Act.
Generally, the theory of strict liability is applicable only to cases where a product is placed in the stream of commerce. Gibson v. Sonstrom, supra; see Restatement of Torts, 2d 402A. In deciding whether a trademark licensor was a "product seller" under General Statutes 52-572m(a), the Connecticut Supreme Court concluded that, "[a]bsent any further involvement in the stream of commerce," the trademark licensor was not a product seller under the Product Liability Act. Burkert v. Petrol Plus of Naugatuck, Inc., supra. The definition of "stream of commerce" is a "[t]erm used to describe goods which remain in interstate commerce though held within a state for a short period of time." Black's Law Dictionary, 5th ed., p. 1274 (1979). U.C.C. 2-105(1) defines "goods" as "[a]ll things (including specially manufactured goods) which are movable at the time of identification . . . ." This court finds that a concrete subcontractor who designed, constructed, prepared, assembled, installed and/or placed a sidewalk did not place "goods" in the "stream of commerce" and therefore, is not a product seller under the Act.
"While there has been a steady trend to expand the doctrine of strict liability, it has not yet been extended to include liability of persons rendering services." Gibson v. Sonstrom, supra.; see Zichichi v. Middlesex Memorial Hospital, supra (hospital provided a service which is outside the purview of the product liability statute); Mount St. Joseph Academy Corp. v. Johnson Controls, Inc., 9 Conn. L. Trib. No. 20, p. 13 (Super. Ct., November 23, 1982, Hammer, J.) (product liability action did not exist against engineer who provided professional services and was not responsible for placing the defective product in the market place). "This rule has been applied to both professional and nonprofessional services." (Footnotes CT Page 1010 omitted). 3 Am. Law Prod. Liab.3d 37:1, p. 8 (1987). In addition, the UPLA excluded from the definition of a "product seller" "[a] provider of professional services who utilizes or sells products within the legally authorized scope of its professional practice" and "[a] non-professional provider of services is not included unless the sale or use of a product is the principal part of the transaction, and the essence of the relationship between the seller and purchaser is not the furnishing of judgment, skill, or services . . . ." U.S. Department of Commerce, Model Uniform Product Liability Act,44 Fed. Reg. 62, 717 (1979).
The plaintiff must plead that the defendant Carriero was engaged in the business of selling the "product", i.e., the sidewalk, curb cut and ramp, and that the defect existed at the time of the sale in order to maintain a product liability action under General Statutes 52-572m et seq. See Zichichi v. Middlesex Memorial Hospital, supra. However, "[o]nce a particular transaction is labeled a `service,' as opposed to a `sale' of a `product,' it is outside the purview of our product liability statute." Id.
"Where the contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods . . . ." Gulash v. Stylorama, 33 Conn. Sup. 108, 111,364 A.2d 1221 (C.P. 1975) (installation of a defective swimming pool is not a sale of goods), citing Epstein v. Giannattasio,25 Conn. Sup. 109, 197 A.2d 342 (C.P. 1963) (hair treatment by a beautician is not a sale of goods).
In the present case, in counts nine and ten of their revised complaint, the plaintiffs allege that the defendant Carriero "is or was engaged in conducting business . . . which . . . consisted of, or included the forming, pouring, placement and/or finishing of concrete sidewalks and ramps." The plaintiffs further allege that defendant Carriero "designed, constructed, prepared, assembled, installed and/or placed . . . a concrete sidewalk, curb cuts and ramp . . . and as such was a product seller or manufacturer . . . ." The facts alleged in the pleadings do not provide the basis for a product liability action under General Statutes 52-572m et seq. since the allegations of counts nine and ten do not mention the materials used, but instead, point to the activities of defendant Carriero which are indicative of the provision of CT Page 1011 services rather than the selling of goods.
The court is not aware of any Connecticut cases directly on point. However, in Regal Steel, Inc. v. Farmington Ready Mix, Inc., supra, the complaint was stricken on the basis of Conn. Pub. Acts No. 79-483, 11 (1979), the Act concerning product liability prior to its codification as General Statutes 52-572m
et seq. In Regal Steel, the court found that no product liability claim existed where the defendants constructed and maintained steel columns and installed anchor bolts connecting the columns to a concrete foundation because the allegations of the pleadings did not bring the defendants within the definition of a "product seller." Regal Steel, Inc. v. Farmington Ready Mix, Inc., supra, 138-39. The facts alleged in the present case are less likely to fall within the purview of the Product Liability Act than the facts alleged in Regal Steel because the case at bar does not involve the construction of a movable object, which is then connected to a foundation, but involves the creation of an immovable sidewalk, curb cut and ramp. Therefore, like the pleadings in Regal Steel, the allegations in the present case do not bring defendant Carriero within the definition of a "product seller."
There are a number of cases in other jurisdictions which are analogous to the case at bar in which the courts found that product liability, strict liability in tort, implied warranty of merchantability and/or duty to warn were inapplicable. See Pennington v. Cecil N. Brown Co., Inc., 371 S.E.2d 106
(Ga.App. 1988) (contractor that had constructed church parking lot was builder of improvements to real property rather than the manufacturer of defective personal property and could not be held liable on strict liability claim); Harrington v. LaBelle's of Colorado, Inc., 765 P.2d 732 (Mont. 1988) (contractor not liable to bicyclist injured in bike accident who brought product liability claim because speed bump is not a "product" under 402A Restatement 2d of Torts); Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla. 1986) (public road was not a "product" for purposes of applying strict liability to contractor who repaved it); Jackson v. L.A.W. Contracting Corporation, 481 So.2d 1290 (Fla.App. 5 Dist. 1986) (the court found that roadwork contractor was not a manufacturer, contractor rendered services for the improvement of real property, supplying of goods was a minor element of the transaction and strict liability applies to consumer products and not to improvements to real property); Milam v. Midland CT Page 1012 Corp., 665 S.W.2d 284 (Ark. 1984) (street was not a "product" under the product liability statute); VanInderstine v. Lane Pipe Corp., 89 A.2d 459, 455 N.Y.S.2d 450 (1982) (highway guardrail was not a "product" for sale and was not placed in the stream of commerce and therefore, a product liability action will not lie); Fisher v. Morrison Homes, Inc., 109 Cal.App.3d 131,167 Cal.Rptr. 133 (1980) (highways and pedestrian pathways are not "products" placed in the stream commerce for profit, but are more akin to a service and thus, strict liability was inapplicable in action against developer to recover for wrongful death of a six-year old bicyclist who was struck and killed by automobile as he rode bicycle from pathway out into traffic on intersecting street); Lowrie v. City of Evanston, 50 Ill. App.3d 376, 8 Ill. Dec. 537, 365 N.E.2d 923 (1977) (parking ramp and parking space were not "products" within the product liability definition). Similarly, this court finds that a sidewalk is an improvement to real property and is not a "product" placed in the stream of commerce. Also, the court finds that defendant Carriero, a concrete subcontractor, similar to the defendant in the above cases, provided services when it erected the sidewalk and therefore, is not a seller or manufacturer of a product as required by the Product Liability Act.
Furthermore, since sidewalks are not available for purchase in the sense that they are offered in the stream of commerce, the policy considerations underlying the doctrine of strict product liability are absent here. See generally, Restatement (Second) of Torts 402A comment c (1965); Prosser and Keeton On The Law of Torts 692-93 (W. Keeto 5th ed. 1984). "The rationale for the doctrine of strict liability in tort for defective products is the injured consumer's need to overcome the practical obstacles to identifying the origins and causes of the defect in the product in a mass-production, mass-distribution context." Mount St. Joseph Academy Corp. v. Johnson Controls, Inc., supra, 15, citing LaRossa v. Scientific Design Corp.,402 F.2d 937, 942 (3rd Cir. 1968). In the present case there is no mass-production and distribution and the plaintiffs do not need protection from an unknown manufacturer or seller. It is noteworthy that the plaintiffs herein are not without adequate alternative remedies, such as, negligence and defective highway claims. Lastly,
 risk distribution, which constitutes the fundamental justification for imposing strict tort liability on sellers in the distributive chain, is inappropriate CT Page 1013 in a service-oriented business, since the service provider ultimately must absorb the financial liability or endeavor to spread the loss among a limited number of customers; this limited capability of risk distribution would jeopardize the continued vitality of service providers.
3 Am. Law Prod. Liab.3d 37:1, 9-10 (1987). Hence, since the defendant Carriero is more akin to a service provider, imposing strict product liability is not appropriate here.
For the reasons stated above, the court does grant the motion to strike counts nine and ten of plaintiffs' revised complaint since the facts alleged do not involve the sale of a "product" by a "product seller" as required under General Statutes 52-572m et seq.
In light of the striking of counts nine and ten, it is not necessary for the court to rule on the motion to strike with respect to counts eleven and twelve.
The defendant Carriero's motion to strike counts nine and ten of the revised complaint of April 3, 1992 is hereby GRANTED.
Thomas P. Miano Judge of the Superior Court